## MEXICAN CENTRAL RAILWAY COMPANY *v.* PINKNEY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 1199. Submitted April 17, 1893. — Decided May 1, 1893.

To give a Circuit Court of the United States jurisdiction on the ground of diverse citizenship, the facts showing the requisite diverse citizenship must appear in such papers as properly constitute the record of th case.

The refusal by the trial court, during the progress of the trial, of leave to file a plea on the question of the plaintiff's citizenship and to permit issue

to be joined thereon is within the discretion of that court and is not reviewable here.

A person in charge of a joint railroad warehouse in a railroad centre in Texas, the property of one of several companies which unite in bearing the expense of maintaining it and in selecting its employés and in controlling its expenses, who makes no contracts and handles no moneys on behalf of another railroad centering there, but not participating in the selection of the employés and in controlling expenses, and who is not on the pay-roll of the latter company, is not its " local agent " upon whom process may be served under the provisions of the statutes of that State (Sayles Revised Civ. Stats. Art. 1223*a*).

The provisions of the Texas statutes which give to a special appearance, made to challenge the court's jurisdiction, the force and effect of a general appearance, so as to confer jurisdiction over the person of the defendant, are not binding upon Federal courts sitting in that State, under the rule of procedure prescribed by the fifth section of the act of June 1, 1872, as reproduced in Rev. Stat. § 914.

THE case is stated in the opinion.

*Mr. A. T. Britton, Mr. A. B. Browne* and *Mr. J. Lewis Stackpole* for plaintiff in error.

*Mr. S. F. Phillips* and *Mr. Frederic D. McKenney* for defendant in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

This writ of error brings up for our consideration the general question whether the Circuit Court of the United States for the Western Dictrict of Texas acquired or rightfully exercised jurisdiction in the present case. This jurisdictional question arises as follows : The defendant in error, Alexander Pinkney, brought an action in that court against the plaintiff in error, the Mexican Central Railway Company, Limited, to recover damages for personal injuries alleged to have been sustained while in the performance of his duties as a brakeman in the employ of the company.

In his original petition the plaintiff alleged that he was a resident, citizen, and inhabitant of the county of El Paso, in the Western District of Texas ; that the defendant was a citi-

zen of Massachusetts, being a corporation organized under the laws of that State, and having its principal office and place of business in Boston; and that it was owning, operating, and maintaining, or operating and maintaining, a line of railroad running from El Paso, in Texas, southwardly through the Republic of Mexico to the city of Mexico, and had an office in El Paso, and a local agent there named Harry Lawton.

Upon the filing of this petition a citation or summons was issued, and was served upon Lawton by the marshal of the district, who made return thereon as follows: "Executed on the 23d day of September, 1891, by delivering to H. Lawton, local agent of the Mexican Central Railway Company, at El Paso, Texas, in person, a true copy of this writ."

On the 30th of September, 1891, the defendant entered a special appearance for the purpose of excepting to the service of the citation, and filed a plea in abatement thereto, as follows:

"Now comes the defendant in the above-styled and numbered cause and, appearing only for the purpose of excepting to the service of the citation herein, and not appearing generally or for any other purpose, says:

"1st. That Harry Lawton, upon whom the citation herein was served as the local agent of this defendant, is not the president, vice-president, secretary, treasurer, general manager or any officer of this defendant, and, neither said Lawton nor any 'joint agent,' or agent at 'the joint warehouse' in the city of El Paso, Texas, has ever been designated by this defendant as its officer or agent upon whom citation might be served in this State and county, and is not authorized by this defendant to receive or accept citation on its behalf.

"2d. That before the establishment of what is known as the 'joint warehouse,' in the city of El Paso, Texas, over which said Lawton has control and management, importers of goods, their brokers and agents, were put to great trouble and inconvenience on account of the lack of the proper and necessary facilities for handling, examining, weighing and classifying goods billed to and from points in the Republic of Mexico upon their arrival at said city of El Paso over the various

roads hereinafter mentioned, and on account of said deficiencies owners of goods destined to points in the Republic of Mexico were frequently subjected to fines and penalties under the custom laws of Mexico on account of inaccuracies in the importation papers required therefor by said Mexican government; that in the interest and convenience of importers of American as well as of Mexican goods and merchandise, and in order thereby to increase the traffic of this defendant, and the other railroads hereinafter mentioned, there was established and since maintained said 'joint warehouse,' where goods, wares, and merchandise destined to points in said republic upon their arrival at said El Paso are transferred, deposited and held by the agent in charge thereof for examination, weighing and classification as aforesaid, prior to their entry into said republic, and where the import duties on goods coming from said republic over defendant's line may be conveniently paid and such goods transferred and turned over to the proper roads by the agent in charge of said 'joint warehouse.'

" 3d. That at the solicitation of the railroads then jointly interested therein said warehouse was constructed and established in or about the year A. D. 1887, by the Atchison, Topeka and Santa Fé Railroad Company, on property owned by it then and since, until the same was duly passed by transfer to the Rio Grande and El Paso Railroad Company, which now and ever since said transfer has owned said warehouse and the property upon which the same is located.

" 4th. That this defendant pays one-half of all the expense incurred in the maintenance and operation of said 'joint warehouse,' while said Rio Grande and El Paso Railroad Company, the Texas and Pacific Railroad Company, the Galveston, Harrisburg and San Antonio Railroad Company, and the Southern Pacific Railroad Company bear the balance thereof upon a tonnage basis.

" 5th. That said Lawton and all 'joint agents' are selected by said Rio Grande and El Paso Railroad Company, and, with the approval of the other companies last aforesaid and this defendant, are appointed by said R. G. & E. P. R. R. Co.,

upon whose pay-rolls the names of such 'joint agents' and the members of their force appear as employés of said last-mentioned company, which pays the salaries and wages thereof.

"6th. That said Lawton, as 'joint agent,' and his force are under bond to said Rio Grande and El Paso Railroad Company, Texas and Pacific Railroad Company, Galveston, Harrisburg and San Antonio Railroad Company, and Southern Pacific Railroad Company, conditioned for the faithful performance of the duties required of them by said last-mentioned companies, to which reports are made, and of and for which money is collected and received by said Lawton.

"7th. That said Lawton, being unauthorized so to do, makes no contracts, and collects and handles no money for or on behalf of this defendant; is under no bond to it; keeps no accounts of or for it; is not on its pay-rolls; was not selected or appointed by it, and this defendant is without power to discharge him; all of which defendant is ready to verify. Wherefore defendant says that said Lawton is not its local agent or other employé or agent, that the service of the citation herein is insufficient, and prays that the return thereon be quashed."

On the 6th of April, 1892, by leave of the court, the plaintiff filed an amended petition setting out with considerable detail the facts upon which he based his claim that Lawton was an agent of the defendant upon whom service could be made, (which facts were not materially different from those set out in the plea and motion to quash the return to the citation,) and making substantially the same allegations as respects the personal injuries sustained by him as were contained in the original petition.

The plaintiff afterwards demurred to the plea in abatement and motion to quash the return to the citation, and the demurrer having been sustained and the service held to have been good, the defendant excepted. Thereafter the defendant filed an answer setting up (1) a general demurrer, (2) a general denial, and (3) a plea of contributory negligence; and the cause thereupon went to trial before the court and

a jury, resulting in a verdict and judgment in favor of the plaintiff for the sum of $3000.

On the trial of the case evidence was brought out on cross-examination of the plaintiff, who testified in his own behalf, which counsel for the defendant claimed tended to show that the plaintiff was not a citizen of the district in which the action was brought, and they thereupon moved the court to permit defendant to file a plea to the effect that plaintiff was not a resident or citizen of the State of Texas when the action was brought, and had never been a resident of that State, but was a deserter from the army of the United States and was a resident and citizen of Arizona Territory, where he had enlisted and where his troop was stationed, so as to raise and present an issue as to the jurisdiction of the court on the ground of citizenship of the plaintiff. But the court ruled that no amendment to the pleadings would be permitted, and that the issue could not then be raised, but that defendant might ask plaintiff as to his residence and citizenship. To which ruling the defendant excepted.

The assignments of error are as follows:

" First. The court erred in assuming jurisdiction over this cause, for the reason that the record herein fails to show the residence and citizenship of the parties to this suit at the time of the institution of the same.

" Second. The court erred in sustaining plaintiff's demurrer to defendant's exception to the service of the citation and motion to quash the return thereof, and in holding that the service on one Harry Lawton, as defendant's agent, was good — 1st, for the reason that plaintiff's demurrer was insufficient in law; 2nd, for the reason that the return of said citation was defective and insufficient; and, 3rd, for the reason that defendant's said exception and motion showed that said Lawton was not the local agent of defendant.

" Third. The court erred in refusing to permit issue to be joined and tried as to its jurisdiction, and in refusing to permit defendant to file its plea to the effect that plaintiff was not a resident and citizen of the State of Texas, as in his complaint averred, at the time his suit was filed, for the reason

that it was the right of the defendant to show, and it was the duty of the court to hear, at any stage of the trial, that plaintiff had wrongfully misstated his residence and citizenship in the attempt to fraudulently confer jurisdiction upon the court, which had in fact no jurisdiction, plaintiff being a resident and citizen of the Territory of Arizona and the defendant, as shown by the record herein, being a corporation created and existing under the laws of the State of Massachusetts, and therefore a resident and citizen of that State."

With respect to the first assignment of error, the point is made that the averment of citizenship of the plaintiff was not sufficiently set out in the amended petition, it being simply alleged therein that the "plaintiff is a resident, citizen, and inhabitant of El Paso County, Texas," which averment referred to the date of the filing of that petition, and not to the date of the commencement of the action. But the original petition, which was the first pleading filed in the case, made the proper averments, as respects the citizenship of the parties, to bring the case within the jurisdiction of the Circuit Court, and in our opinion that was sufficient. The rule is that, to give the Circuit Courts of the United States jurisdiction on the ground of the diverse citizenship of the parties, the facts showing the requisite diverse citizenship must appear in such papers as properly constitute the record of the case. The original petition is properly a part of the record; and, as that made the proper averments as to the citizenship of the parties, the point raised by the first assignment of error is not well taken.

The third assignment of error relates to matters purely within the discretion of the trial court, and is, therefore, of no avail. The proposition is not controverted that if it appears in the course of the trial that the controversy is not one of which the court could take cognizance, by reason of the citizenship of the parties to it, the Circuit Court has the right, and it is its duty, to dismiss the cause for the want of jurisdiction. But that is not this case. The question presented by this assignment of error is, that the court erred in refusing leave to file a plea, during the progress of the trial,

on the question of the plaintiff's citizenship, and in refusing to permit issue to be joined thereon. It is well settled that mere matters of procedure, such as the granting or refusing of motions for new trials, and questions respecting amendments to the pleadings, are purely discretionary matters for the consideration of the trial court, and, unless there has been gross abuse of that discretion, they are not reviewable in this court on writ of error. And even if such questions were reviewable here generally, on writ of error, they are not reviewable in this proceeding, because they do not go to the question of jurisdiction in the court below, which is the only question we can consider upon the present writ of error.

This brings us to the consideration of the questions presented by the second assignment of error, which are (1) as to whether, upon the record, as made by the plea in abatement and motion to quash the return to the citation, and the demurrer thereto, Lawton was a local agent of the defendant upon whom service could be made, within the general meaning of that term, and under the statutes of Texas relating to the method of obtaining service upon foreign corporations doing business in that State ; and (2) as to whether, even if the service was bad, the special appearance of the defendant for the sole purpose of excepting to it, and, after its plea and motion were overruled, its filing a general answer, can be deemed in any sense a general appearance within the meaning of the statutes of Texas relating to such matters of practice, such as operated to confer jurisdiction on the Circuit Court of the United States.

The statute of Texas relating to service of process on foreign corporations is as follows :

" In any suit against a foreign, private, or public corporation, joint stock company or association, or acting corporation or association, citation or other process may be served on the president, vice-president, secretary, or treasurer, or general manager, or upon any local agent within this State, of such corporation, joint stock company, or association, or acting corporation or association." 1 Sayles' Rev. Civ. Stat. Texas, 417, Art. 1223*a*.

Under the allegations of the plea in abatement or motion to quash the return to the citation, and admitted by the demurrer, was Lawton a " local agent " of the defendant company, within the meaning of this statute ?  We think not.   The joint warehouse in which Lawton was employed, and the ground on which it is located, was the property of the Rio Grande and El Paso Railroad Company.   The whole force of employés and agents in that warehouse were selected by that railroad company, with the approval of certain other named companies, not including the defendant; they were on the pay-rolls of that company, and were bonded to it and the other companies ; and Lawton made his reports of the moneys collected and received by him to those companies.   The seventh paragraph of the plea in abatement makes this terse and comprehensive statement : " Lawton, being unauthorized so to do, makes no contracts and collects and handles no money for or on behalf of this defendant ; is under no bond to it; keeps no accounts of or for it ; is not on its pay-rolls; was not selected or appointed by it, and this defendant is without power to discharge him."   The only ground upon which it could possibly be contended that Lawton was a local agent of the defendant company, within the meaning of this statute, is that the company paid one-half of the expense incurred in the maintenance and operation of the joint warehouse.   But surely this fact alone would not create the relation of principal and agent between Lawton and the defendant.   While it may be somewhat difficult to define the line between those who represent a foreign corporation and those who do not, within the meaning of the Texas statute quoted, it is perfectly clear to our minds that the relation between Lawton and the defendant was not such as to render him a " local agent " upon whom process against the company could be served ; for in no proper sense was he the direct representative of the company, any more than a general ticket agent, employed by one of the great trunk lines running out of New York to the West, who sells a through ticket to the city of Mexico, which would entitle the holder of it to transportation to the city of Mexico over the road of the plaintiff in error, would be its

agent, although it might bear some proportion of the expense of the general office in New York.

The contention on the part of the defendant in error, however, is, that even admitting that the service in this case was not sufficient to bring the railway company into court, still, under the laws of Texas, as construed by the highest court of the State, the special appearance of the company for the purpose of objecting to the jurisdiction of the court in the premises, and its subsequent answer on the merits, after its motion to quash the return to the citation had been overruled, amounted to, or was in effect, a general appearance in the case, and gave the Circuit Court jurisdiction. In other words, the point is made that, as the state laws regulating the procedure and practice of the state courts in actions at law furnish the rules for procedure in like cases in the Circuit Courts of the United States, under section 914 of the Revised Statutes, and as, under the statutes of Texas, a special appearance of a defendant to question or object to the jurisdiction of the court for want of personal or proper service of process, even if his objection is sustained, becomes a general appearance to the next term of the court, therefore the court below in this case, by reason of the special appearance of the defendant, acquired jurisdiction of its person, notwithstanding the fact that the original service may have been insufficient and bad.

These statutes regulating the procedure in the state courts of Texas have been before this court for consideration in several recent cases. In *York* v. *Texas*, 137 U. S. 15, the question was whether this state legislation (Arts. 1242 to 1245, Rev. Stats. Texas) providing that a defendant who appears only to obtain the judgment of the court upon the sufficiency of the service of the process upon him is thereafter subject to the jurisdiction of the court, although the process against him is adjudged to have been insufficient to bring him into court for any purpose, was " due process of law," within the meaning of the Fourteenth Amendment to the Federal Constitution, and this court held that it was. A like decision was rendered in the subsequent case of *Kauffman* v. *Wootters*, 138 U. S. 285, and

the ruling in *York* v. *Texas* was reaffirmed. Those were cases arising in the state courts, and were brought here on writs of error to the Supreme Court of the State, and it was, therefore, properly said in the opinion in *York* v. *Texas*, p. 20, that "the State has full power over remedies and procedure in its own courts, and can make any order it pleases in respect thereto, provided that substance of right is secured without unreasonable burden to parties and litigants," citing *Antoni* v. *Greenhow*, 107 U. S. 769.

In the case of *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, decided at this term of the court, questions somewhat similar to those in this case were brought before us. In that case an action had been brought in the Circuit Court of the United States for the Western District of Texas by a citizen of the Eastern District of that State against a corporation organized under the laws of Kentucky, and therefore a citizen of that State, and which was doing business in said Western District. The defendant demurred to the action on the ground that, under the first section of the act of Congress, approved March 3, 1887, c. 373, § 1, 24 Stat. 552, as corrected by the act of August 13, 1888, c. 866, 25 Stat. 434, it could not be sued in the Western District of Texas, but if suable at all in the federal courts of that State it must be sued in the Eastern District of the State, of which district the plaintiff was a citizen. The demurrer was overruled and exceptions saved by the defendant, after which it filed an answer and went to trial upon the merits of the case, the trial resulting in a verdict and judgment in favor of the plaintiff for the sum of $4515. The defendant thereupon sued out a writ of error from this court, on the question of jurisdiction, under the act of Congress approved February 25, 1889, (25 Stat. 693,) and the case was decided here on a motion to dismiss that writ of error. The motion was overruled and the judgment of the Circuit Court reversed, and the cause remanded with directions to render judgment for the defendant upon its demurrer.

It was held by the court that, under the act of Congress approved March 3, 1887, as corrected by the act of August 13, 1888, above referred to, the defendant was not suable in the

Western District of Texas, because neither it nor the plaintiff was a citizen of that district. In that case the appearance of the defendant to question the jurisdiction of the Circuit Court was relied on, under the Texas statutes, and the authority of the Texas decisions and the decisions of this court in *York* v. *Texas* and *Kauffman* v. *Wootters*, above cited, to save the jurisdiction; but this court, speaking by Mr. Justice Gray, in reply to this contention, said (p. 208):

"It is further contended, on behalf of the defendant in error, that the case is controlled by those provisions of the statutes of Texas, which make an appearance in behalf of a defendant, although in terms limited to the purpose of objecting to the jurisdiction of the court, a waiver of immunity from the jurisdiction by reason of non-residence; and which have been held by this court not to violate the Fourteenth Amendment of the Constitution of the United States, forbidding any State to deprive any person of life, liberty, or property without due process of law. Rev. Stats. of Texas of 1879, Arts. 1241–1244; *York* v. *State*, 73 Texas, 651; *S. C. nom. York* v. *Texas*, 137 U. S. 15; *Kauffman* v. *Wootters*, 138 U. S. 285; *St. Louis &c. Railway* v. *Whitley*, 77 Texas, 126; *Ætna Ins. Co.* v. *Hanna*, 81 Texas, 487.

"But the question in this case is not of the validity of those provisions as applied to actions in the courts of the State, but whether they can be held applicable to actions in the courts of the United States. This depends on the true construction of the act of Congress, by which 'the practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding, existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held.' Rev. Stat. § 914; Act of June 1, 1872, c. 255, § 5; 17 Stat. 197.

"In one of the earliest cases that arose under this act, this court said: 'The conformity is required to be "as near as may be" — not as near as may be possible, or as near as may be practicable. This indefiniteness may have been suggested

by a purpose: it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely encumber the administration of the law or tend to defeat the ends of justice in their tribunals.' *Indianapolis & St. Louis Railroad* v. *Horst,* 93 U. S. 291, 300, 301.

"Under this act, the Circuit Courts of the United States follow the practice of the courts of the State in regard to the form and order of pleading, including the manner in which objections may be taken to the jurisdiction, and the question whether objections to the jurisdiction and defences on the merits shall be pleaded successively or together. *Delaware County* v. *Diebold Safe Co.,* 133 U. S. 473, 488; *Roberts* v. *Lewis,* 144 U. S. 653. But the jurisdiction of the Circuit Courts of the United States has been defined and limited by the acts of Congress, and can be neither restricted nor enlarged by the statutes of a State. *Toland* v. *Sprague,* 12 Pet. 300, 328; *Cowles* v. *Mercer County,* 7 Wall. 118; *Railway Co.* v. *Whitton,* 13 Wall. 270, 286; *Phelps* v. *Oaks,* 117 U. S. 236, 239. And whenever Congress has legislated upon any matter of practice, and prescribed a definite rule for the government of its own courts, it is to that extent exclusive of the legislation of the State upon the same matter. *Ex parte Fisk,* 113 U. S. 713, 721; *Whitford* v. *Clark County,* 119 U. S. 522.

"The acts of Congress, prescribing in what districts suits between citizens or corporations of different States shall be brought, manifest the intention of Congress that such suits shall be brought and tried in such a district only, and that no person or corporation shall be compelled to answer to such a suit in any other district. Congress cannot have intended that it should be within the power of a State by its statutes to prevent a defendant, sued in a Circuit Court of the United States in a district in which Congress has said that he shall not be compelled to answer, from obtaining a determination of that matter by that court in the first instance, and by this court on writ of error. To conform to such statutes of a State would 'unwisely encumber the administration of the law' as

well as 'tend to defeat the ends of justice' in the national tribunals. The necessary conclusion is that the provisions referred to, in the practice act of the State of Texas, have no application to actions in the courts of the United States."

While the decision in the *Denton case* does not fully cover the case at bar, still the reasoning on which the court reached its conclusion therein has a bearing upon the question under consideration, which occupies rather a middle ground between the question presented in *York* v. *Texas*, above cited, and that presented in the *Denton case*, and is not directly or authoritatively controlled by either of those decisions. In the present case, the precise question is whether the provisions of the Texas statutes which give to a special appearance, made to challenge the court's jurisdiction, the force and effect of a general appearance, so as to confer jurisdiction over the person of a defendant, are binding upon the Federal courts sitting in that State, under the rule of procedure prescribed by the 5th section of the act of June 1, 1872, as reproduced in § 914 of the Revised Statutes.

The words of this section, "as near as may be," were intended to qualify what would otherwise have been a mandatory provision, and have the effect to leave the Federal courts some degree of discretion in conforming entirely to the state procedure. These words imply that, in certain cases, it would not be practicable, without injustice or inconvenience, to conform literally to the entire practice prescribed for its own courts by a State in which Federal courts might be sitting. This qualification is indicated in *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291, 300, 301.

But aside from this view, there are other provisions of the statutes which clearly manifest an intention on the part of Congress not to leave the jurisdiction of the inferior Federal courts to the regulation and control of state legislation. Thus by section 1011, Revised Statutes, as corrected by the act of February 18, 1875, c. 80, it is provided that "there shall be no reversal in the Supreme Court, or in a Circuit Court upon a writ of error, for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court." 18 Stat. 318.

This entirely preserves to this court the right and duty to pass upon the jurisdiction of the lower court.

So, too, by the act of February 25, 1889, 25 Stat. 693, c. 236, it is provided that "in all cases where a final judgment or decree shall be rendered in a Circuit Court of the United States in which there shall have been a question involving the jurisdiction of the court, the party against whom the judgment or decree is rendered shall be entitled to an appeal or writ of error to the Supreme Court of the United States to review such judgment or decree, without reference to the amount of the same; but in cases where the decree or judgment does not exceed the sum of five thousand dollars, the Supreme Court shall not review any question raised upon the record except such question of jurisdiction;" and it is further provided that "such writ of error or appeal shall be taken and allowed under the same provisions of law as apply to other writs of error or appeals."

By the first clause of section 5 of the act of March 3, 1891, 26 Stat. 826, 827, c. 517, it is provided that "appeals or writs of error may be taken from the District Courts, or from the existing Circuit Courts, direct to the Supreme Court . . . in any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision."

These provisions of the Federal statutes which confer upon litigants in the Federal courts the right to have the jurisdiction of such courts reviewed by this court by appeal or writ of error would be practically destroyed or rendered inoperative and of no effect if state statutes, such as those of Texas, could make an appearance to question the jurisdiction of a Federal court a general appearance, so as to bind the person of the defendant. It would be an idle ceremony to bring to this court for review the question of the Circuit Court's jurisdiction, arising out of a failure to serve the defendant with process, if the defendant's special appearance before the lower court to challenge its jurisdiction should, under state laws, amount to a general appearance which conferred such juris-

diction. The effect of the statutes of a State giving such an operation to an appearance for the sole purpose of objecting to the jurisdiction of the court, would be practically to defeat the provisions of the Federal statutes which entitle a party to the right to have this court review the question of the jurisdiction of the Circuit Court. Under well settled principles this could not and should not be permitted, for wherever Congress has legislated on, or in reference to, a particular subject involving practice or procedure, the state statutes are never held to be controlling. In *Harkness* v. *Hyde*, 98 U. S. 476, it was held by this court that illegality in the service of process by which jurisdiction is to be obtained is not waived by the special appearance of the defendant to move that the service be set aside; nor after such motion is denied by his answering to the merits. Such illegality is considered as waived only when he, without having insisted upon it, pleads in the first instance to the merits. We are of opinion that under the statutes of the United States the jurisdiction of the Federal courts, sitting in Texas, is not to be controlled by the statutes of that State above referred to. Jurisdiction is acquired as against the person by service of process; but as against property within the jurisdiction of the court, personal service is not required. *Boswell* v. *Otis*, 9 How. 336; *Pennoyer* v. *Neff*, 95 U. S. 714. But it is well settled that no court can exercise, at common law, jurisdiction over a party unless he is served with the process within the territorial jurisdiction of the court, or voluntarily appears. *Kendall* v. *United States*, 12 Pet. 524; *Harris* v. *Hardeman*, 14 How. 334.

In the present case, when it was established by the facts stated in the plea in abatement, and admitted by the demurrer thereto, that the plaintiff in error was never brought before the court by any proper or legal process, the Circuit Court was without jurisdiction to proceed in the case; and in so doing, and in assuming jurisdiction and proceeding to trial on the merits, its action was erroneous.

*Our conclusion, therefore, is that the judgment of the lower court must be reversed; that the cause be remanded to the*

*Circuit Court for the Western District of Texas, with directions to set aside the verdict and judgment, and to overrule the demurrer to the plea in abatement; and it is accordingly so ordered.*