## UNITED STATES et al. v. TACOMA ORIENTAL S. S. CO.

No. 8153.

Circuit Court of Appeals, Ninth Circuit.

Nov. 9, 1936.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini, Asst. U. S. Atty., both of Seattle, Wash., for appellants.

Hayden, Metzger & Blair, of Tacoma, Wash., for appellee.

Keith R. Ferguson, of San Francisco, Cal., and Bogle, Bogle & Gates, Cassius E. Gates, Roberts & Skeel, and Harry Henke, Jr., all of Seattle, Wash., amici curiæ.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken from an order of the bankruptcy court in a proceeding under section 77B of the Bankruptcy Act (11 U. S.C.A. § 207), denying "the special appearance of the" appellants, and ordering them to pay to appellee revenues earned under an ocean mail contract.

Appellee by contract dated March 14, 1928, purchased from the United States seven steel cargo vessels for an agreed amount of $696,906. One-fourth of the price was paid on delivery of the vessels, and the balance was to be paid in annual installments over a period of 7½ years. A mortgage was given to the United States, to secure the balance of the purchase price.

On June 26, 1929, appellee entered into a contract with the United States for ocean mail service covering a period of 10 years beginning August 1, 1929.

Appellee was in default on March 30, 1933, in the payment of certain installments due on the remaining balance of the purchase price of the vessels. On the date mentioned, the United States Shipping Board adopted a resolution, providing, among other things, " * * * that upon the acceptance of the conditions herein outlined by the Mortgagor and the performance of any conditions required to be performed by the Mortgagor prior to this arrangement taking effect, the Comptroller General of the United States be requested not to effect a setoff in the case of the Tacoma Oriental Steamship Company of the amounts due from the United States to said Company until further notice from this Board." Thereafter the United States Shipping Board was, by executive order abolished, and its functions transferred to the Department of Commerce.

On January 6, 1936, appellee certified to the Post Office Department that its vessel, Steamship Grays Harbor, had completed its calls on the North China Route, pursuant to the ocean mail contract, on a voyage commenced in November, 1935.

Appellee filed a petition for reorganization under section 77B of the Bankruptcy Act on January 11, 1936. On the same day

an order was entered approving such petition as being properly filed. Another order was entered the same day authorizing, among other things, appellee to continue in possession of its property and business under the direction and control of the court.

The Secretary of Commerce advised appellee by letter dated January 22, 1936, that the resolution of the United States Shipping Board, above mentioned, had been rescinded.

On January 22, 1936, appellee certified to the Post Office Department that its vessel, Steamship Shelton, had completed its calls on the South China Route, pursuant to the ocean mail contract, on a voyage commenced in November, 1935.

Appellee filed a petition in the bankruptcy court on February 8, 1936, alleging most of the facts above related. In that petition it was alleged that the unpaid balance on the purchase price of the ships was approximately $187,000, and it also alleged on information and belief, that on January 27, 1936, the Postmaster General certified to the Comptroller General of the United States that the vessels, Steamship Grays Harbor and the Steamship Shelton, had completed their voyages under the ocean mail contract, and that there was due from the United States the sum of $14,071.50 for the voyage of the Steamship Grays Harbor, and the sum of $14,931.00 for the voyage of the Steamship Shelton.

The petition also alleged that appellee could not operate its vessels without the benefit of the ocean mail contract payments, and that unless the earnings for the sailings made in November, 1935, were released to it, it would be unable to continue its business. The refusal of the Comptroller General to make the payments, and the action of the Secretary of Commerce in rescinding the resolution of the United States Shipping Board, are alleged to be " * * * arbitrary, capricious and * * * an unlawful and illegal interference with the property and business of [appellee], contrary to the order of the court heretofore made and entered herein and contrary to the purpose, intent and spirit of section 77B of the Bankruptcy Act."

On the same day the foregoing petition was filed, an order to show cause was entered, ordering that the earnings of the vessels for the sailings made in November, 1935, and future earnings under the ocean mail contract, be paid to appellee "or that

United States of America, J. R. McCarl, Comptroller General of the United States of America, Daniel C. Roper, Secretary of Commerce, Henry Morgenthau, Secretary of the Treasury, and J. C. Peacock, Director of the United States Shipping Board Bureau, Department of Commerce, and each of them, appear before the above entitled Court * * * then and there to show cause, if any they have, why said payments should not be made."

The United States filed a motion to dismiss challenging the jurisdiction of the court over the proceeding for various reasons therein stated. The United States also filed a paper termed "Special Appearance," wherein it moved that the petition "be dismissed on the ground that this court has no jurisdiction over this defendant in this particular form of action." Three reasons are urged in support of this motion.

The Secretary of the Treasury, the Secretary of Commerce, the Director of the United States Shipping Board Bureau and the Comptroller General, each filed a document designated as "Special Appearance and Objection to the Jurisdiction of the Court." Each moved that the petition be dismissed on the ground that the court had no jurisdiction over said persons, and the reasons given by each were that he was a resident of the District of Columbia, and not a resident of the Western District of Washington, and that no process was served on him within the Western District of Washington.

All of the foregoing motions were filed on February 28, 1936. On March 7, 1936, the bankruptcy court entered an order overruling and denying the special appearances of appellants, denying the motion to dismiss filed by the United States, and further ordering and directing that all the appellants except the United States pay appellee the earnings under the ocean mail contract for the sailings in November, 1935, and ordering the payment of future earnings under the contract.

All appellants petitioned the bankruptcy court for leave to appeal, but the assignment of errors was filed by all the appellants except the United States. The order of the bankruptcy court allowed the appeal as to all appellants.

The petition for appeal and the assignment of errors filed in this court were filed by all appellants, and this court allowed an appeal as to all appellants.

One of the issues before us is whether or not the trial court had jurisdiction over the persons of the individual appellants.

Regarding this issue, appellee's first contention is that "under the Washington practice, the appearance became general by the inclusion of the motion for the dismissal of the petition." This contention cannot be maintained, for state law is not controlling in the federal courts in the determination of the question as to whether an appearance is general or special. Mexican Central Railway Co. v. Pinkney, 149 U.S. 194, 13 S.Ct. 859, 37 L.Ed. 699; Galveston, etc., Railway Co. v. Gonzales, 151 U.S. 496, 14 S.Ct. 401, 38 L.Ed. 248. See, also, Southern Pac. Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942. These cases deal with local statutes converting special appearances into general appearances or defining a general appearance. The rule should be the same, whether the local law is made by the Legislature or the courts.

We, therefore, must determine what the rule in the federal courts is when a motion for dismissal is made as a special appearance. The term "special appearance" is usually applied to the action of a defendant in objecting to the jurisdiction of the court over his person. The most common grounds for a special appearance are defects in the summons or return, or illegality of service. A motion to dismiss would ordinarily seem to be directed to the merits of the action or suit, because a defendant is not interested in the disposition of the action or suit so long as there is no valid service upon him. In Harkness v. Hyde, 98 U.S. 476, 25 L.Ed. 237, the defendant, who had been served by a sheriff on an Indian reservation, "appeared specially * * * and moved the court to dismiss the action, on the ground that the service thus made upon him on the Indian reservation was outside of the bailiwick of the sheriff and without the jurisdiction of the court." The Supreme Court directed that the service made on defendant be set aside, saying (98 U.S. 476, at page 479, 25 L.Ed. 237): "The right of the defendant to insist upon the objection to the illegality of the service was not waived by the special appearance of counsel for him to move the dismissal of the action on that ground, or what we consider as intended, that the service be set aside; nor, when that motion was overruled, by their

answering for him to the merits of the action. Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived." This language was quoted with approval in Southern Pacific Company v. Denton, supra, 146 U.S. 202, 206, 13 S.Ct. 44, 36 L.Ed. 942. We shall therefore treat the motion to dismiss made herein as a motion to set aside the service.

Both appellee and the amici curiæ contend that the lower court had power to issue its process outside its district under the express terms of section 77B of the Bankruptcy Act.

The material provisions of section 77B are as follows (after providing for the filing of an original petition, or answer in a pending bankruptcy proceeding, and approval thereof by the court):

"If the petition or answer is so approved, an order of adjudication in bankruptcy shall not be entered and the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." 11 U.S.C.A. § 207 (a).

"In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved." 11 U.S.C.A. § 207(o).

Concretely, it is asserted that the ocean mail contract was property and that the lower court acquired jurisdiction of such contract and the rights thereunder; that the indebtedness of the United States was property over which the court had jurisdiction; that an appropriation having been made for the payment of moneys due under ocean mail contracts, such moneys became the property of appellee.

It is true that "Congress may authorize the civil process of a federal district court to be served upon persons in any other district." Continental Bank v. Chicago, Rock Island Ry. Co., 294 U.S. 648, 683, 55 S.Ct. 595, 609, 79 L.Ed. 1110. The question presented, therefore, is: Has Congress authorized service of process of the lower court on persons in another district under the facts herein enumerated?

The provision of 11 U.S.C.A. § 207 (a) giving to the lower court the powers which a federal court has in appointing a receiver in equity, is limited in its operation by the words "not inconsistent with this section." In other words, the clause, "the court * * * shall * * * have exclusive jurisdiction of the debtor and its property wherever located" is not restricted only to the powers it has in appointing a receiver, because those powers are granted only if they are "not inconsistent with" section 77B. The same may be said concerning 11 U.S.C.A. § 207(o), for by that provision, the same powers of the court in bankruptcy are conferred if "consistent with the provisions" of section 77B.

The question is thus narrowed to whether the lower court had jurisdiction to issue its process to appellant in another district, under the facts of this case, pursuant to the provision that "the court * * * shall * * * have exclusive jurisdiction of the debtor and its property wherever located."

The provision of the Act of March 3, 1933, c. 204, 47 Stat. 1474 (11 U.S.C.A. § 205 note) relating to the reorganization of railroads is almost identical to the provision involved herein, and was construed in Continental Bank v. Chicago, Rock Island Ry. Co., supra. In that case certain creditors, outside the district in which the order was entered approving the petition filed under the reorganization act, held collateral security, and were enjoined from disposing of the collateral. It was held that the process of the court issuing the injunction could lawfully be served outside its

district, the court saying (294 U.S. 648, at page 683, 55 S.Ct. 595, 609, 79 L.Ed. 1110): "Jurisdiction over the property wherever located carries with it jurisdiction to enjoin, in a proper case, interferences with the property, and this includes, by necessary inference, the power to send process to that end for service upon the persons to be enjoined wherever they may be found within the United States."

The reasoning of that case is applicable to section 77B of the Bankruptcy Act. Where a receiver had been appointed for the debtor's property in Georgia it was held that a District Court in New York had power to issue its process to the receivers in Georgia to compel them to turn over the property to the debtor's trustee. In re Greyling Realty Corporation (C.C.A.2) 74 F.(2d) 734. It has also been held that the District Court of Delaware might lawfully issue its process to one in Virginia, who was interfering with the debtor's property in Virginia by an action of ejectment, and by obtaining legal title to the property by a judicial sale which had theretofore been enjoined by the Delaware court. In re Norfolk Weavers (D.C.Del.) 12 F.Supp. 495. It likewise has been held that the District Court of Delaware might lawfully issue its process to one in Michigan who was interfering with the debtor's property in Illinois in a suit brought by him in Illinois to set aside a transfer of assets to the debtor. In re Midland United Co. (D.C.Del.) 12 F.Supp. 502.

▇▇▇ We believe that the act giving exclusive jurisdiction of the lower court over the debtor's property wherever located simply means that the res (the debtor's property) is to be considered solely under the jurisdiction of the lower court. Any wrongful invasion, interference, or disposition of that res is to be dealt with solely by the lower court. Jurisdiction over a person outside the lower court's jurisdiction, is given to the lower court, only if such person is in some manner invading, interfering, or disposing of the debtor's res, and then only to the extent of preventing or forestalling the invasion, interference or disposition of such res. The act gives no jurisdiction to the trial court to issue its process outside its district in proceedings purely in personam, in which no protection of the debtor's res is involved. We agree with the statement in Re Prudence Bonds Corporation (C.C.A.2) 75 F.(2d) 262, 263, that "it is clear both from

the language used in these subdivisions [section 77B(a), and (o), 11 U.S.C.A. § 207(a, o)], and from the consequences of a contrary ruling, that Congress did not intend the bankruptcy court in proceedings under section 77B to take over all litigation between the debtor and third persons."

In all the above cases and in Grand Boulevard Inv. Co. v. Strauss (C.C.A.8) 78 F.(2d) 180, the statements made concerning the power of the District Court to issue its summons outside its district are all made in connection with and by reason of the statutory provision giving the District Court exclusive jurisdiction "of the debtor and its property wherever located." Unless the debtor's property is involved, no jurisdiction exists beyond the District Court's boundaries.

▇▇▇ In accordance with this construction we must determine what property of the debtor is being invaded, interfered with, or disposed of by the appellants. Performance of the contract by appellee created a debt owing to it by the United States. What is sought is a mandatory injunction requiring payment of the debt. It is a proceeding purely in personam.

Appellee and amici curiæ both argue strongly that the proceeding is merely one to compel the performance of official ministerial duties. They thus concede that the basis of the proceeding is the breach of a ministerial duty. Their remedy is one in personam, purely, and issuance of process by the lower court outside its district in such case is not authorized. In this holding we are unable to follow Thomas v. Winslow (D.C.N.Y.) 11 F.Supp. 839.

It is contended, that since an appropriation had been made for the payment of amounts due under ocean mail contracts, and that the Postmaster General had certified to the Comptroller General the amount due appellee, there remained nothing to be done by the officers except the payment, which is a ministerial duty. In other words, it is asserted that because an appropriation had been made, followed by certification of the amount due, appellants are withholding property due appellee. If it could be said that any of the appellants were holding property belonging to appellee, undoubtedly that would be an interference with the debtor's property, and in such case the lower court would have acquired jurisdiction. Assuming that the money due appellee could be identified in

the hands of the Secretary of the Treasury, does that money belong to appellee?

When one incurs a debt, that debt does not operate as an assignment or conveyance pro tanto of his assets to the creditor instanter. Whatever assets the debtor had prior to the time when the debt was incurred, still belong to the debtor thereafter, until they are disposed of voluntarily or involuntarily. The mere fact that the government became indebted to appellee did not transfer the money to appellee.

When the appropriation was here made, the funds thus appropriated were not by the appropriation transferred to appellee. The funds would become the property of appellee only by application of such appropriation, or, in other words, payment to appellee. The funds appropriated, were not, therefore, property belonging to appellee. We conclude that the lower court had no jurisdiction over the persons of the individual appellants.

It should be here noted that section 77 (a) of the Bankruptcy Act was amended by the Act of August 27, 1935, 49 Stat. 911 (11 U.S.C.A. § 205(a) and under that amendment it is provided that "Process of the court shall extend to and be valid when served in any judicial district." It is significant that although section 77B was also amended in that month, no such provision was included in that amendment.

■ Appellants have assigned as error the denial of the special appearance filed by the United States. They argue that actions, against the United States, based upon contracts, may be brought in either the District Courts or the Court of Claims, where the amount involved does not exceed $10,000. 28 U.S.C.A. § 41 (20); 28 U.S.C.A. § 250. But if the amount involved in such actions exceeds $10,000, then the Court of Claims has exclusive jurisdiction. 28 U.S.C.A. § 250.

Appellee's petition, as against the United States, asked that the latter pay to appellee the amount due it. This petition, therefore, would be based on contract, and inasmuch as the amount involved exceeds $10,000, could be brought only in the Court of Claims. Appellee, however, has apparently abandoned this theory, for no argument is made in its behalf that the lower court had jurisdiction over the United States; and in addition, appellee's main contention is that this proceeding is one to compel the performance of ministerial duties only. Under that theory no statutory authority is cited to show that in such a suit, the United States has given its consent. Under neither theory did the lower court have jurisdiction over the United States.

The order of the trial court overruling and denying the motion to dismiss filed by United States and the special appearances is reversed, with directions to enter an order dismissing the petition against the United States and setting aside the service on the individual appellants.

DENMAN, Circuit Judge.

I concur. The appellee seeks the adjudication of contract debts. While the debts are property of the appellee, their situs is in the Washington District of the lower court, where the appellee resides. State Tax on Foreign-Held Bonds, 15 Wall. 300, 320, 21 L.Ed. 179. Hence the phrase of 77B "wherever located" cannot be interpreted to give extraterritoriality to the property in the debt.

Whatever right to compel the persons claimed to be owing the debt to appear in the 77B proceeding must arise from one of two sources. (1) One is that portion of subdivision (a) of 77B concerning the power of the court which "shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature."

This refers to what is known as an equity receivership as distinguished from a receivership in foreclosure proceedings. Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591. In such an equity receivership the court has the power to compel debtors of the corporation in receivership to litigate the debts by ancillary proceedings in the receivership. White v. Ewing, 159 U.S. 36, 38, 15 S.Ct. 1018, 40 L.Ed. 67; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 312, 73 L.Ed. 669. This right, however, is confined to debtors who are in the district in which the proceeding is pending, unless they voluntarily appear in the proceeding. It does not extend the process of the District Court beyond the district. Lion Bonding Co. v. Karatz, 262 U.S. 77, 87, 43 S.Ct. 480, 483, 67 L.Ed. 871.

(2) The other source from which the power to make valid service of its process beyond the district in suits purely in

personam and not for the protection of property extraterritorially located, is subdivision (*o*) of 77B as follows: "In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved."

In the ordinary voluntary proceeding in bankruptcy the District Court has not the power to bring into the bankruptcy proceeding the debtor to the bankrupt estate, whether he resides within or without the district in which the bankruptcy proceeding is pending. 11 U.S.C.A. § 46(b); Kelley v. Gill, 245 U.S. 116, 119, 38 S.Ct. 38, 62 L.Ed. 185. Certainly here is no warrant for the extraterritorial service of the court's process in suits at law purely in personam.