## Richmond.

RICHMOND & MECKLENBURG R. R. CO. V. HUMPHREYS.

JANUARY 18th, 1894.

1. RAILROADS—*Trespass—Liability—Case at bar.*—Railroad company, without authority, erected expensive improvements on plaintiff's land. Becoming insolvent, its franchises and property were purchased by another company: HELD: The purchaser is liable for the land taken without considering the benefit from the construction of the railroad, and for the damage to the residue of the land.

2. IDEM—*Measure of damages—Evidence.*—In such case, *held,* the amount of the damages, as respects the residue of the land, is the difference in the market value of the land before and after the taking thereof; and as respects the land taken, including said improvements, is the fair cash market value of the land and said improvements at the time of the taking in view of the uses to which they have been put; and it was not error to refuse to allow a witness to testify that he had donated similar property to the company.

3. PRACTICE AT COMMON LAW—*Continuance.*—Under the circumstances set forth in the opinion, *held,* not error to deny the motion for continuance.

Appeal from decree of circuit court of Mecklenburg county, rendered June 6, 1892, in a suit wherein Thomas F. Humphreys was complainant and the Richmond and Mecklenburg Railroad Company was defendant. The land of complainant was illegally entered by a railroad company which erected thereon expensive stone and earth works. That company became insolvent, and the defendant company purchased its franchises and property. The object of the suit was to compel payment for the right of way. An issue out of chancery was ordered, and at the trial the jury assessed the plaintiff's dam-

ages at $7,079 with interest from January 1, 1882. The court below approved the verdict, and from its decree the defendant appealed. Opinion states the case.

*B. B. Munford* and *Thomas N. Williams,* for appellant.

*Finch & Atkins* and *W. W. Henry,* for appellee.

RICHARDSON, J., delivered the opinion of the court.

This is the second time this case has been before this court; and for a full statement of the circumstances under which the controversy arose, and the merits of the controversy, reference is made to the opinion of this court when the case was formerly here. See *Humphreys* v. *Richmond & Mecklenburg R. R. Co.,* 88 Va., 431.

For the purposes of this opinion, it is sufficient to say that the appellee, Humphreys, was a subscriber to the capital stock of the Richmond & Mecklenburg Railroad Company in the sum of $1,000, which had been reduced by payments to $700. Humphreys was at this time the owner, by purchase, of a tract. of land on Roanoke river, near Clarksville, over which, prior to the purchase of Humphreys, the old Roanoke Valley Railroad Company had erected costly stone piers in Roanoke river, a stone abutment at the bank of said river, and an extensive earthwork or embankment from said abutment to the high ground south thereof, as and for a part of its roadway. This work was constructed without authority of law, the Roanoke Valley Railroad Company never having in any way acquired the right of way over this tract of land, though it had acquired the right of way through and over most of the other lands along its proposed railway. Before completing its road, the Roanoke Valley Railroad Company became insolvent, and, by purchase, the Richmond and Mecklenburg Railroad Company became its successor and the owner of all the rights of way

which had been lawfully acquired by it, but did not thereby become the owner of the right of way, nor of the stone and earthwork aforesaid, on and over the track of land owned by the appellee, Humphreys, which, as before stated, had never been acquired by said Roanoke Valley Company.

Humphreys having subscribed as aforesaid to the capital stock of the Richmond & Mecklenburg Railroad Company when that company was about proceeding to construct its road, its agents were directed to solicit the donation of the right of way by the land owners, respectively, along the proposed road, to the company. The president of the company, J. B. McPhail, after frequent and urgent importunities, representations, and promises, finally induced the appellee, Humphreys, to execute the paper, known in the original record as exhibit "A," which, upon its face, was an unconditional obligation on his part to convey to the Richmond & Mecklenburg Railroad Company, when thereto requested by the president of said company, the right of way through and over his said tract of land; and said paper was delivered to said McPhail, but upon the agreement and understanding between him and Humphreys that said paper should not be delivered to said company except upon just compensation by it to Humphreys for the stone and earthwork aforesaid, including the land proposed to be taken, and for damages to the residue of the tract of land, unless the withholding of said paper would endanger the construction of the road.

McPhail, though he had undertaken and promised to do so, and had thereby induced Humphreys to execute said paper "A," never presented to the directory of his said company the claim of Humphreys to compensation, nor did he ever take any steps to secure the same; but, on the contrary, long after the building and equipment of his company's road was fully assured, and when the company had ample means with which to make just compensation to Humphreys for his property, turned said paper "A" over to his said company, and thence-

forth the company claimed that by that paper Humphreys had made an absolute and unconditional donation of the right of way over his said land, including the valuable stone and earth work aforesaid, and that he was bound to convey the same to the company, as provided on the face of said paper. This contention was denied by Humphreys, who insisted that said paper was executed by him and delivered to McPhail, as his agent, upon and subject to the conditions above named, neither of which conditions had been performed, and that, instead of delivering said paper to the company, he should, under the circumstances, have delivered it up to Humphreys. In the mean time, and prior to the institution of this suit, the Richmond and Mecklenburg Railroad Company instituted an action at law in the circuit court of Mecklenburg county against said T. F. Humphreys to recover from the latter the balance due on his said subscription of $1,000 to the capital stock of said company. At the October term, 1885, of said court, with the leave of court, Humphreys filed his bill against the Richmond and Mecklenburg Railroad Company, setting forth substantially, but more·in detail, the circumstances and facts above referred to, and praying for an injunction restraining said railroad company from proceeding in said·action of law until the further order of the court; that said paper "A," executed ·on the 3d of October, 1881, be declared null and void; that the damages to the plaintiff's land be set off against his said subscription, &c., and for general relief. A temporary injunction was accordingly awarded the plaintiff, Humphreys, but on condition of his confessing judgment in said action at law for the balance due on his said subscription, and judgment was accordingly confessed.

The Richmond and Mecklenburg Railroad Company answered the bill, admitting, in effect, that it had not in any way acquired the right of way over the plaintiff's land other than by said paper "A," and insisting that by said paper Humphreys made an unconditional donation of said right of way,

including said stone and earth work, and that he was estopped thereby from raising any question as to the company's right to said property, and that it was entitled to have a conveyance of same from Humphreys according to the terms of said paper.

Being thus at issue, both parties took depositions, and the cause having been matured, came on and was heard by said circuit court on the 15th day of April, 1889, when a decree was therein rendered dissolving the injunction theretofore awarded in the cause, and dismissing the plaintiff's bill. From that decree the plaintiff, Humphreys, obtained an appeal to this court. Upon the hearing of that appeal this court held that said paper "A," executed and delivered by said Humphreys to said McPhail, on the 3d day of October, 1881, was so executed and delivered upon certain conditions, neither of which had been performed, and that the same was null and void; and this court so holding, entered a decree here reversing and annulling the decree of the circuit court of Mecklenburg appealed from, to wit: the decree of April 15, 1889, and remanding the cause to the said circuit court with instructions to restore the case to its place on the docket, to be proceeded in to a final decree, and with a further instruction that, when the case should be entered for hearing, the said circuit court should direct an issue *quantum damnificatus* to be tried at the bar of said court, on the law side thereof, to ascertain the damages aforesaid, and that when the same should be so ascertained and duly certified to the chancery side of said court, should be setoff against said judgment at law confessed by the appellant in favor of the Richmond & Mecklenburg Railroad Company, and that the excess, if any, over and above said judgment, be decreed against said railroad company in favor of the appellant, Humphreys.

When the case went back to the circuit court, that court, at the January term thereof, 1892, made an order in the cause directing the issue required by the decree of this court; and at the May term thereof, 1892, the case was tried, and the jury

returned the following verdict: "We, the jury, upon the issue joined, find in favor of the plaintiff, T. F. Humphreys, and ascertain his damages to be $7,079, with interest from January 1, 1882." And judgment was accordingly entered on the law side of said court, and the same being duly certified to the chancery side of said court, the following decree was entered in the cause:

"And this court, approving said verdict, in accordance therewith and with the decree of the Supreme Court of Appeals, pronounced on the 14th of December, 1891, doth adjudge, order, and decree that the plaintiff do recover of the defendant the said sum of $7,079, with legal interest thereon from the 1st day of January, 1882, till paid, and the legal costs of this suit, including the cost of the said issue, and the cost awarded by the Supreme Court of Appeals, to be credited by the judgment confessed by the plaintiff in favor of the defendant on the 9th of October, 1885, for $695, with legal interest thereon from the 10th of January, 1885, and $9 56, cost of said judgment.

"And the court doth further adjudge, order and decree, that whenever the defendant shall pay the above decree, interest and cost, that then the plaintiff and his wife do execute and deliver to the defendant a proper deed, acknowledged and ready for record, conveying to the defendant the 3.83 acres of his land taken by it in its right of way through his land, with all the earthworks and masonry thereon or thereto belonging, and all claims for damages done to the residue of his tract by reason of the construction or completion of its line of road through it. From this decree the defendant obtained an appeal to this court.

The questions to be decided by this court are presented in the five several bills of exception taken by the defendant to certain rulings of the trial court.

1. The defendant's first bill of exceptions is to the action of the court in refusing its motion for a continuance of the cause,

on the ground that a witness for the defendant, one W. S. Gooch, a resident of Louisa county, Va., more than one hundred miles distant from Boydton, Mecklenburg county, Va., the place of trial, and who, it appeared, had been duly served with process on the 31st day of May, which process was issued on the 28th of May, 1892, to appear on the 2d of June, 1892, the time fixed for the trial, and that said Gooch was not present. This bill of exceptions sets forth that when the case was called for trial on the 2d day of June, 1892, and before the jury had been sworn to try the issue, the following statement was made to the court by counsel for the defendant, to-wit: That the defendant was not prepared for trial, and asked for a continuance or postponement for the reason then stated by counsel as follows: That some time before the trial, to-wit, about the middle of May, an arrangement was entered into between Thomas N. Williams, resident counsel for the defendant company, and Beverly B. Munford, of Richmond, division counsel of the defendant company, on the one hand, and Messrs. Finch & Atkins, attorneys for Thomas F. Humphreys, on the other, by which it was agreed that the trial of this case should be commenced on Wednesday, the 8th of June, 1892; that relying upon this agreement, Beverly B. Munford, of counsel for the company, had made arrangements which were imperative and which could not be changed—one in Baltimore for the 2d of June, and one at another point for the 3d of June— and could not, therefore, be present. The court so certifies and it is doubtless true that these statements were made by the counsel for the defendant, who was present at the trial; but it is also true that no exception was taken to any action of the court refusing to continue the case on the ground of absence of counsel. Such statements of counsel are therefore out of the case, and the only question properly raised by this, the defendant's first bill of exception, is as to the refusal of the court to continue the case on account of the absence of the witness Gooch. It is true that the court certifies that counsel for the

defendant stated to the court that said Gooch was the con-
tractor who did the work for the defendant company over the
lands, abutments, &c., in controversy, and was a witness mate-
rial for the company's defence, and that it could not go to trial
in his absence; but it is equally true, as certified by the court,
that neither of the counsel for the defendant company had
ever talked with said Gooch about the matter in controversy in
this case.   And it is further certified in this bill of exceptions
that, on the 28th of May, it appearing to the court that the
arrangement fixing the 8th of June as the time for the trial of
the case was made, and was stated by counsel for the plaintiff,
and not denied by counsel for the defendant, subject to the
approval of the court, counsel for the defendant stating that it
had to be subject to the approval of the court; and that the
court being satisfied that the business of the court would be
completed several days before the 8th day of June, stated to
counsel that, when the cases on the docket had all been dis-
posed of, it would adjourn, and would not be willing to wait
several days longer to try this case; that thereupon counsel for
the plaintiff stated that they were very desirous of trying the
case at that term of the court, and that, if there was any doubt
as to the court's remaining in session until after the 8th of
June, they desired to fix some earlier day for the trial of the
case; that thereupon, it being conceded that all the cases upon
the issue docket would be disposed of by Wednesday, the 1st
day of June, the court fixed upon Thursday, the 2d day of
June, for the trial of the case, and informed counsel that on
that day the case would be called and either tried or continued
if proper grounds were shown for a continuance; and that, on
the second day of June, Mr. Munford being still absent when
the case was called, the court refused the motion of counsel
for the defendant to further postpone or to continue the case,
or to delay the trial until the 8th day of June, on account of
the absence of the witness, W. S. Gooch.

The question is, did the defendant company bring itself

within the rule applicable to continuances of causes? We think it clearly did not. About six months has elapsed since the order was made directing the issue in the cause, all of which period, except a very few days just preceding the trial, was permitted to pass without any effort to ascertain, either by talking with the witness or by corresponding with him, what would be the character of his testimony, or whether it would be material or not. And notwithstanding the agreement between counsel, made about the middle of May, subject to the approval of the court, that the case should be tried on the 8th day of June, the summons for this witness was not issued until the 28th day of May, the day on which the court fixed upon the 2d day of June for the trial of the case, and only three or four days prior to the trial. This, so far from evincing that degree of diligence required by the rule, shows gross negligence and indifference on the part of the defendant. Moreover, the witness residing more than one hundred miles distant from the place of trial, the defendant could, under the statute, § 3365, Code 1887, have taken his deposition. The cases of *A. & D. R. R. Co.* v. *Peake,* 87 Va., 130, and *Meyers, &c., Receivers* v. *Trice,* 86 Va., 835, relied on by counsel for the appellant, were decided upon grounds entirely different from those insisted upon in the present case, and have no application to this case. It is perfectly clear that the trial court did not err in overruling the defendant's motion for a continuance.

2. The defendant's second bill of exceptions sets forth that, after all the plaintiff's evidence had been introduced, the defendant company, to sustain the issue on its part, introduced one J. J. Love, and, through its counsel, stated to the court that it desired to prove by said witness that he, said Love, was the owner of a property on the opposite side of the river from the property owned by the plaintiff, on which had been erected an embankment, piers, and an abutment similar to those on the plaintiff's land, and that he (Love), had given the right of way, including said piers, abutment and embankment, to said

railroad company, in order that the jury, from these circum-
stances, might form some estimate of the value of the plain-
tiff's property at the time of the construction of said railroad.
But the court refused to allow the witness to be introduced for
such purpose, or to allow counsel for the defendant to ask any
such questions.   It goes without saying that the court did not
err in this ruling, and it would be a useless waste of time to
further consider the question.

3. The defendant's third bill of exceptions sets forth that
upon the trial of the cause counsel for the plaintiff, in his
closing speech, stated to the jury that the plaintiff was en-
titled to recover the value of said piers, abutment, and em-
bankment for railroad purposes; and that counsel for the
defendant then asked the court to inform the jury that such
statement did not embody the law, and that the plaintiff could
only recover the market value of the property as of the time
it was taken, which the court refused to do, stating that it
would not at that time, and in the midst of the argument, give
any instruction.   It is clear that the court did not err in this
respect.   The request of counsel that the court should arrest,
and thereby disarrange the argument of counsel, in order to
then instruct the jury upon the law of the case, was premature
and opposed to the well settled rules of practice.   Moreover,
the instruction asked for did not correctly propound the law
of the case.

4. The defendant's fourth bill of exceptions is to the refusal
of the court to give to the jury two instructions asked for by
counsel for defendant, and in giving in lieu thereof three in-
structions of its own.   In this exception the court certifies all
the evidence in the cause.

By the first instruction asked for by counsel for the defend-
ant the court was asked, in effect, to say to the jury that in
ascertaining the damages to the plaintiff's land taken, and the
damages to the residue of the trust, they should award an
amount equal to the difference between the market value of

the property at the time it was taken and the market value after the same had been taken. The second instruction asked for by counsel for the defendant company lays down an entirely different rule for ascertaining the value of the property taken, namely, the fair cash market value of the land, right of way, embankment, abutment, and piers so taken, at the time of taking the same, and concludes by asking the court to say to the jury that, in ascertaining the plaintiff's damages, they should not consider the value of the property to the defendant company for railroad purposes. The two instructions thus asked for by counsel for the defendant were properly refused by the court—first, because they are inconsistent with each other, and calculated to confuse and mislead the jury, and to leave them to grope their way in darkness and ignorance as to which of the two conflicting instructions should be their guide in arriving at their verdict; and, second, because neither of said instructions correctly propound the law applicable to the case.

On the other hand, the instructions given by the court, of its own motion, in lieu of the instructions asked for by counsel for the defendant, do correctly state the law of the case:

1st. The first of these instructions follows the statute, § 1078, Code 1887, and says to the jury that they shall ascertain and determine from the evidence what would be a just compensation to the plaintiff for the land taken by the defendant, the Richmond and Mecklenburg Railroad Company, and for damages to the residue of the tract, beyond the peculiar benefits derived by him in respect to such residue by the completion of said railroad.

2d. The second of said instructions says to the jury that, in ascertaining the damages to the residue of said tract, they shall award the plaintiff, Humphreys, an amount equal to the difference between the market value of the residue at the time of the taking and its market value after the same had been so taken. And in ascertaining said damages they may consider

every circumstance, present or future, which affected its then value.

3d. The court further instructs the jury that the amount to be awarded Thomas F. Humphreys for his land taken, including the embankment, abutment, and piers upon said land, or belonging thereto, is the fair cash market value of the said land, embankment, abutment, and piers so taken, at the time of the taking, and said damages are to be assessed in view of the uses to which the said land, embankment, abutment, and piers have been put, and not necessarily in view of the use or productive value to the owner before the taking.

These instructions, and especially the third and last one, given by the court in lieu of those asked for on behalf of the defendant, are logically adapted to the principles applicable to the peculiar circumstances of the case in hand, that no argument is needed to enforce them. The question presented has been clearly and definitely settled by the highest court in the land, and the doctrine there held has been recognized and enforced by many other courts of very high authority. In *Boom Company* v. *Patterson*, 98 U. S. R. 403, the Supreme Court of the United States has so clearly stated the doctrine as to leave no room for doubt. In that case the defendant in error, Patterson, was the owner in fee of an entire island, and parts of two other islands in the Mississippi river above the falls of St. Anthony, in the county of Anoka, in Minnesota, which, it seems, were unproductive and valueless to him or to any one else for any other than boom purposes. The land on these islands, owned by the said Patterson, the boom company sought to condemn for its uses, and upon its application commissioners were appointed by the district court to appraise its value, and they awarded to the owner the sum of $3,000. From this award both the company and the owner appealed. When the case was brought before the district court, the owner, Patterson, who was a citizen of the State of Illinois, applied for and obtained its removal to the circuit court of the

United States, where it was tried. The jury found a general verdict, assessing the value of the land at $9,358 33, but accompanied it with a special verdict assessing its value, aside from any consideration of its value for boom purposes, at $300, and, in view of its adaptability for such purposes, a further and additional value of $9,058 33; whereupon, the company moved for a new trial, and the court granted the motion, unless the owner would elect to reduce the verdict to $5,500. The owner so elected, and thereupon judgment was entered in his favor for the reduced amount. To review this judgment the company took the case to the Supreme Court of the United States on a writ of error, and that court affirmed the judgment of the circuit court. The only question applicable to the case here in hand, which was decided by the Supreme Court, was as to the amount of compensation the owner of the land was entitled to receive, and the principle upon which the compensation was to be estimated.

In delivering the unanimous opinion of the court Mr. Justice Field said : " In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated. So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all

cases. . Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. The position of the three islands in the Mississippi fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the lands. The boom company would greatly prefer them to more valuable agricultural lands, or to lands situated elsewhere on the river; as, by utilizing them in the manner proposed, they would save heavy expenditures of money in constructing a boom of equal capacity. Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands."

The principle thus applied is, beyond all question, a just one, and Mr. Justice Fields' argument in support of its application is unanswerable. The same principle applies with even greater force to the case here under consideration; for in that case the property condemned was taken as it came from the hand of nature, while here the valuable earthwork and masonry, on the land taken by the appellant company, had been erected for railroad purposes, and was adapted to such purposes. Here another railroad company had erected without lawful authority the earthwork and masonry in question, for railroad purposes, and the appellee becoming subsequently the owner of the land, including said earthwork and masonry, was, as respects the latter, as much entitled to the fair market value of same, viewed with reference to the purposes for which they were taken and the uses to which they have been applied, as if he had erected them at the special instance and request of the appellant company, and upon its promise, either express or implied, to make just compensation therefor. The appellant

company needed the appellee's property for railroad purposes, and, without lawful authority, took and appropriated it to railroad purposes, and, for over eleven years, has applied it to railroad purposes. It is with poor grace that the company comes now, after all the wrong and injury inflicted by it upon the appellee, and when common justice and the law call upon it to make restitution, asserting the monstrous claim that the appellee's damages must be estimated with reference to the productive value of the property before it was so taken.

We repeat, that the instructions given by the court in lieu of those asked for on behalf of the defendant, the appellant here, are eminently correct, and that the trial court did not err, either in refusing said instructions asked for by the defendant or in giving the instructions which it did give.

5. The defendant's fifth and last bill of exceptions is to the action of the court overruling its motion to set aside the verdict of the jury and grant it a new trial, upon the ground that the verdict was against the law and the evidence. It is only necessary to say that the facts proved fully warranted the verdict. Indeed, in view of the evidence, the jury might well have found a verdict for a much larger amount. This court could not, therefore, without improperly invading the rightful province of the jury, undertake to disturb the verdict. Moreover, the trial judge, both in the conduct of the case and in expounding the law applicable thereto, appears to have presided with conspicuous ability and fairness. There is nothing, therefore, of which the appellant company can justly complain. For these reasons we are of opinion that the decree appealed from is without error, and that the same must be affirmed.

Lacy, J., dissenting, said:

I do not concur in the opinion of the court, and file my own dissenting views. This is an appeal from a decree of the cir-

cuit court of Mecklenburg county, rendered on the 6th day of June, 1892. This is a case arising out of proceedings under the decree rendered in this court on the 14th day of December, 1891, in the case of *Humphreys* v. *R. & M. Railroad Co.*, which case, at its first hearing in this court, is reported in 88 Va., 431, which is referred to for the proceedings then had and the conclusions reached. By said decree of this court it was directed that an inquiry of damages should be made and tried at the bar of the circuit court by a jury, to ascertain the damages done to the appellant, Humphreys, by the said railroad company, by entering upon and using his land, earthwork, or embankment, and masonry on his land, or belonging thereto, at the time they were so taken possession of, and the damages to the residue of the appellant's said tract of land resulting from any work of the railroad company on said embankment after the railroad took possession thereof, and the same, when ascertained, to be set off against the judgment confessed by said Humphreys in favor of the said railroad company, which judgment was for the amount of his subscription to said company still unpaid. When the case went back, a jury was impaneled, and the amount of damages found by their verdict was $7,079, with interest from January, 1882. The defendant moved the court to set aside the said verdict, which motion was overruled, and judgment was rendered on the verdict, and the defendant appealed.

The errors assigned here are: First, the refusal of the circuit court to continue the case on account of the absence of a material witness; second, the refusal of the circuit court to continue the case because of the absence of the leading counsel for the defendant; third, the exclusion of the evidence of the witness Love, by whom it was desired to show the cost, if any, to the company, of the right of way through the land of the witness, which was on the opposite side of the river, and exactly like the land of Humphreys, containing pillars in the river, and an embankment and old railway bed across the low-

grounds on the river; fourth, because of misdirection by the court as to the law of the case and the proper method of ascertaining and estimating the amount of damages; fifth, the refusal of the circuit court to set aside the verdict and grant a new trial to the defendant company.

We will pass by, for the present, the first and second assignments of error, as to the action of the court in refusing a continuance to the defendant upon the ground of the absence of a material witness, and the absence of the leading counsel for the defendant, as they will appear to be immaterial, in view of my conclusions herein.

I think there was no error in the third assignment, as the fact that the witness Love had given away for nothing his property, although exactly like the property of Humphreys, could not in any way affect the amount of damages proper when the land had not been given.

The fourth assignment of error is because of the action of the court in giving the following instruction to the jury: " They are further instructed that, in ascertaining the damages to the residue of the tract, they shall award said Humphreys an amount equal to the difference between the market value of the residue of the said tract at the time of its taking and its market value after the same had been so taken; and in ascertaining said damages they may consider every circumstance, present or future, which affected its then value. The court further instructs the jury that the amount to be awarded the said Humphreys for his land taken, including the embankments, abutments, and piers upon said land, or belonging thereto, is the fair cash market value of the said land, embankment, abutment, and piers to be taken, at the time of the taking, and said damages are to be assessed in view of the uses to which said land, embankment, abutment, and piers have been put, and not necessarily in view of the use or productive value to the owner before the taking"—having also, on the motion of the plaintiff, instructed the jury that they should

determine from the evidence what would be a just compensation to the plaintiff for the land taken by the defendant, and for damages to the residue of the tract beyond the peculiar benefit derived by the plaintiff in respect to such residue by the completion of said railroad; and in refusing certain other instructions asked for by the defendant railroad company, as follows: "The court instructs the jury that they shall ascertain and determine from the evidence what would be a just compensation to the plaintiff for the land taken by the defendant, and for the damages to the residue of the tract beyond the peculiar benefits to be derived in respect to such residue. They are further instructed that in ascertaining the damages for the land actually taken, and to the balance of said tract, they shall award said plaintiff an amount equal to the difference between the market value of his property at the time of the taking and its market value after the same had been so taken. The court further instructs the jury that the amount to be awarded said plaintiff for the right of way through his land, including the embankment, abutment, and piers on said right of way, *is the fair cash market value of the land, right of way, embankment, abutment, and piers so taken, at the time of the taking, and not what the same may be worth to the railroad company for railway purposes.*"

The dispute as to these instructions arises upon the words italicized above, as follows: The plaintiff claimed, and the court so instructed, "that the said damages are to be assessed in view of the uses to which said land, embankment, abutments, and piers have been put," whereas the defendant claimed and the court rejected its instruction so directing, that the amount of the damages is "the fair cash market value of the land, right of way, embankment, abutments, and piers so taken, at the time of the taking, *and not what the same may be worth to the railway company for railway purposes.*" In determining the true measure of damages in a case like this, I will remark that the statute prescribes (sections 1077, 1078, Code,) when the con-

demnation is by commissioners under chapter 46, that the commissioners, after viewing the land, and having such proper evidence as either party may offer, shall ascertain what will be a just compensation for the said land, and for the damages to the residue of the tract beyond the peculiar benefits to be derived, in respect to such residue, from the *work to be constructed*. In this case, as is fully explained and set forth in the opinion of this court by Richardson, J., on the former appeal to this court, in *Humphreys* v. *R. & M. Railroad Co.*, 88 Va., 431, before cited, the defendant company entered upon this land by virtue of a right of way in writing from Humphreys, which was set aside and annulled for reasons there stated, no condemnation proceedings being had or deemed necessary, and, as has been already shown from the decree of this court, the case was remanded for such inquiry of damages to be made by a jury, and the measure of damages stated in the instructions by the court in accordance with the statute, (section 1078, Code,) thus : " *What* would be a just compensation to the plaintiff for the land taken by the defendant, and for damages to the residue of the tract beyond the peculiar benefit derived by him in respect to such residue by the completion of said railroad," and this principle is substantially restated in different language in the second instruction. In the third instruction the provision objected to is inserted as is already set forth, thus : " And said damages are to be assessed in view of the uses to which the said land, embankment, abutment, and piers have been put, and not necessarily in view of the use or productive value to the owner before the taking." The added words, "And said damages are to be assessed in view of the uses to which the said land, embankment, abutment, and piers have been put," indicate that the character of the proceeding have been obscured or lost sight of. Our law proceeds upon the idea of a just compensation for what private property is taken for public uses, and provides for compensation to the land-owner for injury to the residue of the tract by reason of the taking of

a part of the land. These damages are for compensation for an injury resulting from a lawful act. Our constitution prohibits the taking of private property for public purposes without just compensation. The compensation is allowed for the actual taking, and, so far as the actual taking is the cause of a resulting deprivation of right, it is a taking in the constitutional sense, and the law requires that it likewise shall be compensated by a just compensation. If the whole, and not the part, only, be taken, just compensation for what was actually taken would be the complete measure of relief. There would be no damages beyond that to be assessed. There would be no damages to be paid in excess of just compensation for the whole, and it would not be contended that the measure of compensation could be otherwise than the full value of the property taken; for it must be borne in mind that the transaction is a lawful one, and bears in it no element of a tort.

Regarding the transaction, then, and all the proceedings thereunder, from the standpoint of compensation, where can we find any place for damages to the plaintiff for the use to which the defendant is to put the property taken, unless we are to compensate the land-owner for what is not his? What are his proprietary rights in the railroad of the defendant? Does it affect his rights that this railroad, when completed, is worth $15,000 per mile, or that it is a public incorporated turnpike worth but little, or a county road with no marketable value, provided it has been lawfully taken for public purposes under the right of eminent domain? If he has received just compensation for what has been taken directly and what has been taken incidentally, all that has been taken from him having been paid for, can he go further and lay a valid claim to the subsequent use to which it has been put? What is the proper amount of compensation we are not now considering in this case. The question is what is the true measure of damages by way of compensation? This is a matter of law to be decided by the court; and when this has been correctly decided

by the court the jury must follow the direction of the court or their verdict cannot stand. What is just compensation for what is taken is one question here. In considering the phrase "just compensation," a learned author says (Sedg. Dam.): "The general principle running through the cases seems to be that a just compensation to the owner for taking his property for public use without his consent means the actual value of the property in money without any deduction for estimated profit or advantages accruing to the owner from the public use of his property. Speculative advantages or disadvantages, independent of the intrinsic value of the property, from the improvement are a matter of set-off against each other, and do not affect the dry claim for the intrinsic value of the property taken." Our statutes, as we have seen, however, after providing that one of these shall be set off against the other, directs that the excess of the first (that is, of the injury to the residue, if any,) above the second (that is, the peculiar benefits to be derived in respect to such residue from the work to be constructed,) shall affect the dry claim for the intrinsic value of the property taken; but there is no provision for an allowance for the value of the property taken in the hands of its new owner. If it is more valuable then, or less so, the question of just compensation for what is taken is not thereby affected. The true interpretation of our statute is the question to be determined in this case. "Just compensation for what is taken is the value of the land taken for the uses to which it is suitable, having regard to the existing business wants of the community, or such as may be reasonably expended in the immediate future. The inquiry in such cases must be, what is the property worth in the market, viewed, not merely with reference to the uses to which it is at the time applied, but with reference to the uses for which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses?" Opinion of Mr. Justice Field in *Miss. & Run River Boom Co.* v. *Patterson,* 98 U. S., 410. While disclaiming to

lay down a rule to goven in all cases, this we consider the true rule, and the result of the cases which I have considered. It is right that the value of the earthwork, abutment, and piers for valuable uses should be considered as constituting an element of the value of the land; but the use to which it has been put is subsequent and independent of an ended transaction, and could not have been considered by any assessors of its value when taken, and the instructions complained of are to this extent erroneous; and, as it is impossible to determine to what extent this error may have governed the case in its results, it is error for which I think the judgment must be reversed.

DECREE AFFIRMED.