## UNITED STATES v. CRARY et al.

District Court, W. D. Virginia, at Lynchburg.
Oct. 24, 1932.

See, also, 2 F. Supp. 832.

R. O. Crockett, of Tazewell, Va., for the United States.

John T. Harris, of Harrisonburg, Va., and Edwin B. Jones, of Monterey, Va., for U. S. Lumber Co.

Edw. C. Martz, of Harrisonburg, Va., for Crary heirs.

McDOWELL, District Judge.

Following the filing of the opinion in this case of May 11, 1932 ([D. C.] 1 F. Supp. 406) the United States Lumber Company has, under protest, appeared generally and has filed an answer, which embodies a number of motions.

As preliminary to what will be an unavoidably tedious discussion, it seems advisable to say here:

█ (a) I cannot doubt the right of the government to institute an omnium gatherum condemnation suit to acquire the rights and claims of every person, known or unknown, who has or may have a right to, or a right in, the land sought to be acquired. This conclusion is, I believe, too manifest to require discussion.

█ (b) Because the government is a sovereign, it may at any time, before taking the land sought, dismiss or abandon this proceeding. If the government's representatives regard the awards, after confirmation, as excessive, the government has a right to decline to accept the awards and to dismiss this proceeding. See Kanakanui v. U. S. (C. C. A. 9) 244 F. 923; Owen v. U. S. (C. C. A. 5) 8 F.(2d) 992.

In this case I understand that there will be no conflicts as to the tract 212 b lying mainly in Augusta county. I shall therefore confine the following discussion to the two tracts sought to be condemned 212 a–I and 212–I, which lie wholly in Highland county.

In the following discussion I shall have occasion to refer to the following statutes, which are for convenience here cited: (1) The Act of Aug. 1, 1888, c. 728, 25 Stats. p. 357, 40 USCA §§ 257, 258; (2) the "Weeks Act" of March 1, 1911, c. 186, 36 Stats. 961, 16 USCA §§ 480, 500, 513–519, 521, 552, 563; (3) the Act of March 3, 1891, c. 561, § 24, 26 Stats. 1095, 1103; (4) the Act of June 4, 1897, c. 2, 30 Stats. 11, 35, 36; (5) the Act of June 7, 1924, c. 348, § 9, 43 Stats. 653, 655 (16 USCA § 471); (6) sections 4364–4378, Code of Va. 1930; (7) sections 1074–1088, Code of Va. 1887; (8) section 1105f, subsecs. (4)–(18), Pollard's Code of Va. 1904.

The sections of the Code of 1887 and 1904 are prototypes of sections 4364–4378, Code 1930.

The scheme of the Virginia condemnation statutes above cited is in brief outline as follows:

(a) The filing in the clerk's office of a petition for condemnation.

(b) Notice of the time, place, and purpose of a motion by the condemnor to appoint five freeholders, residents of the county where the land lies, as condemnation commissioners, any three of whom may act, to view the land, hear evidence, and report the sums of money which will be just compensation.

(c) The order of court appointing the five commissioners, directing them at a time fixed in the order to go upon the land sought to be expropriated, to view it and the "adjacent" land, to hear evidence, and to file a report of their findings as to just compensation.

(d) The report is to lie for thirty days for exceptions.

(e) If, on trial before the judge, good cause for objection to the report is not shown, it will be confirmed. If confirmed, the amount of the award may be paid into court, to be distributed by the judge, after trial, or the matter of distribution may be referred to a commissioner.

If for good cause the report is set aside, another commission is appointed, and so on until a report is confirmed.

Confining attention to cases in which the government seeks to condemn a part of a tract of land, the state statutory law, for instance section 4366, Code Va. 1930, in addition to the value of the parcel sought to be condemned, authorizes damages (1) to the "adjacent property" of the owner of the parcel sought to be condemned; (2) to "other property" of the said owner; and (3) to property of "any other person."

As briefly as possible, and in the reverse of the above order, I shall here comment on the foregoing provisions of the Virginia statute in respect to damages.

## (a) Damages to Property of Any Other Person.

The only limitations on the government's right to take private property for public use found in the Constitution of the United States which need be mentioned at this juncture are the provisions as to due process of law and just compensation, found in the Fifth Amendment. The only federal statutory limitations, so far as I know, are found in the Condemnation Conformity Act, section 2 of the Act of Aug. 1, 1888 (25 Stats. p. 357, 40 USCA § 258) and possibly the provision in the Weeks Act, § 6 (36 Stats. p. 962, 16 USCA § 515), requiring the consent of the state.

█ In the petition to condemn in the case at bar, there are no "other persons" than claimants to the two tracts sought to be condemned who are made defendants. Such other persons could not be bound by any judgment rendered in this cause, and we have

here no concern with them. However, it tends to clarify my own thoughts to say that the provision of the state statutory law in question creates a new and a substantive right, not given by the Federal Constitution and not given by any federal statute. The state of Virginia is in advance of Congress as to damages to others than the condemnee; but this provision is not applicable to a condemnation proceeding instituted by the federal government. See Campbell v. U. S., 266 U. S. 368, 371, 45 S. Ct. 115, 69 L. Ed. 328. Additional authority for this statement will be cited further along in this opinion.

### (b) Damages to Other Property of the Condemnee.

In construing the meaning of the phrase "just compensation" as used in the Fifth Amendment, the Supreme Court has held that, in addition to the value of the parcel sought to be taken, the damages allowable are only the damages to the residue of the tract of which a part is sought to be taken. See Sharp v. U. S., 191 U. S. 341, 354, 24 S. Ct. 114, 48 L. Ed. 211; U. S. v. Grizzard, 219 U. S. 180, 183, 184, 185, 31 S. Ct. 162, 55 L. Ed. 165, 31 L. R. A. (N. S.) 1135; U. S. v. Cress, 243 U. S. 316, 329, 37 S. Ct. 380, 61 L. Ed. 746; U. S. v. Wayne County (mem.), 252 U. S. 574, 575, 40 S. Ct. 394, 64 L. Ed. 723.

No federal statute gives to a condemnee, in a government condemnation suit, any right to damages to property, which is not the residue of the tract of land, a part of which is sought to be taken. The right of a condemnee to have damages to "other property" given him in the state courts in condemnations by the state or its agencies, or by public service corporations, is, to my mind, a substantive right. And, if so, this court is bound by the foregoing Supreme Court decisions, and I must refuse to allow damages to the condemnee's "other property."

However, I recognize the difficulty in always accurately discriminating between substantive and procedural laws, and I shall for present purposes assume that the state statutes which give the condemnee damages to other property is procedural. If the matter is procedural, the question which arises is: Shall this court follow the state statutes or follow the Supreme Court rulings? It is clear that damages based on the state statute would be greater than if based on the Supreme Court rulings. It would, if it did not defeat, certainly impair, the purpose of sec-

tion 1 of the Act of Aug. 1, 1888 (25 Stats. 357, 40 USCA § 257), to adopt the Virginia statutory method of ascertaining damages. It follows that the discretion given the court by the words "as near as may be" in the second section of said act (40 USCA § 258) should be exercised by following the Supreme Court rulings. See Indianapolis, etc., R. Co. v. Horst, 93 U. S. 291, 300, 301, 23 L. Ed. 898; Luxton v. North River Bridge Co., 147 U. S. 337, 338, 13 S. Ct. 356, 37 L. Ed. 194; Mexican Central R. Co. v. Pinkney, 149 U. S. 194, 207, 13 S. Ct. 859, 37 L. Ed. 699; Chappell v. U. S., 160 U. S. 499, 514, 16 S. Ct. 397, 40 L. Ed. 510; Hills & Co. v. Hoover, 220 U. S. 329, 336-337, 31 S. Ct. 402, 55 L. Ed. 485, Ann. Cas. 1912C, 562. See, also, authorities cited 28 USCA § 724, note 8, construing the General Conformity Act (Rev. Stats. § 914, 28 USCA § 724), which was copied in section 2 of the Act of August 1, 1888 (25 Stats. p. 357, 40 USCA § 258).

In Mexican Central Railway Co. v. Pinkney, supra, 149 U. S. 194, 207, 13 S. Ct. 859, 865, 37 L. Ed. 699, it is said: "The words of this section, 'as near as may be,' were intended to qualify what would otherwise have been a mandatory provision, and have the effect to leave the federal courts some degree of discretion in conforming entirely to the state procedure. These words imply that in certain cases it would not be practicable, without injustice or inconvenience, to conform literally to the entire practice prescribed for its own courts by a state in which federal courts might be sitting. This qualification is indicated in Indianapolis & St. Louis Railroad v. Horst, 93 U. S. 291, 300, 301 [23 L. Ed. 898]."

### (c) Damages to the Owner's Adjacent Property.

If the expression "adjacent property" means the residue of the tract of land, a part of which is sought to be taken, there is here no difference between the Supreme Court rulings and the state statute. But, if this expression includes more than is included in the phrase "the residue," there is a difference. And the same reasoning which leads to the conclusion that damages to the condemnee's "other property" cannot be allowed requires that "adjacent property" must in the case at bar be restricted to "the residue."

Further along I shall have occasion to discuss the meaning of the phrase "the residue" as I understand it and as applied to the case at bar.

■ The very important difference in the rights of a landowner, given by the state Constitution and state statutes, when sued in a state court by a state agency or by a public service corporation, and his rights when sued by the federal government in a federal court, seem to me rather clear. In the latter case, the consent of the state having been given (section 19, Code Va. 1930), the condemnee's rights are merely that he shall have due process of law and just compensation; and (by force of Beatty v. U. S. [C. C. A.] 203 F. 620) a possible trial by jury as to the adequacy of an award by commissioners. The landowner has the first two rights by force of the Fifth Amendment, and possibly the last by the vis major of a ruling by the Circuit Court of Appeals of this circuit. Other rights given by the state Constitution and state statutes the condemnee cannot have in this court in the case at bar. To hold otherwise is to hold that the federal government is bound by state constitutions and statutes, without a federal statute so declaring.

In Kohl v. U. S., 91 U. S. 367, 374, 23 L. Ed. 449, in speaking of government's right to condemn land, it is said: "If the United States have the power, it must be complete in itself. It can neither be enlarged nor diminished by a State. Nor can any State prescribe the manner in which it must be exercised."

Motion No. 1. "That in advance of the appointment of a commission to ascertain what will be just compensation for the land proposed to be taken by petitioner, a jury be impaneled at the bar of this court to try the title to the land in controversy between the Crary heirs and respondent."

■ Section 2 of the Act of August 1, 1888, c. 728 (25 Stats. 357, 40 USCA § 258), requires that the procedure in this cause shall conform, as near as may be, to the procedure in like causes in the state courts. The state statutes forbid a trial of title in advance of the payment into court of the sum awarded, and direct that such trial, when and if held, be held either by the court, without a jury, or by a commissioner. These conclusions are made absolutely necessary by sections 4364–4374, Codes 1919 and 1930. See, also, Carson v. City of Richmond, 113 Va. 527, 531, 75 S. E. 119.

I see no reason why the procedure in this case may not conform to the state procedure in the respect in question.

■ One of the vices in the motion is the theory that the lumber company has a constitutional right to a jury trial of the conflicting claims of title of the lumber company and the Crary heirs. By force of Beatty v. U. S. (C. C. A.) 203 F. 620, the lumber company may possibly have, if it objects to the award of the condemnation commissioners, a right to a jury trial of the question of just compensation. But the Beatty Case does not touch the question of a jury trial to settle conflicting titles.

If, pending this condemnation suit, the lumber company sees fit to sue the Crary heirs in ejectment, it may have, in such ejectment suit, a right to a jury trial; but it has no such right in, or as ancillary to, this condemnation suit. As the Beatty Case does not touch this point, the question is ruled by the Supreme Court cases cited hereinafter as showing the law before the Beatty Case was decided.

There is no constitutional right to a jury trial in this condemnation case of conflicting claims to the fund, if and when it is paid into court. And I can see no propriety in staying the condemnation suit for such trial as is proposed.

If stayed for a trial of title between the lumber company and the Crarys, why not as between each and every one of the remaining defendants and either the lumber company, or the Crarys, or both? It is true that the statement is made in the verified answer of the lumber company that "respondent avers that the only claimants to the land sought to be acquired by the petitioner are the Crary heirs and this respondent. * * *" This allegation does not justify ignoring the also verified allegation of the petition that "there is also filed * * * memoranda showing the names and residences of the owners of said lands. * * *" Granting that the word "owners" was intended to mean only claimants, still some may be lienors (who have title questions facing them) and some may be claiming to own the tracts sought to be acquired, or some interest in one or more thereof. And, if this condemnation suit should be stayed to let two of the defendants litigate their conflicting claims of title, some or all of the remaining defendants would have the same right.

Motion No. 2. "If title to the land on trial by a jury be adjudged in respondent and petitioner nevertheless proposes to take the land in invitum, that a jury be impaneled at the bar of this court to ascertain just compensation to respondent agreeable to the Fifth Amendment to the Constitution of the

United States and the laws made in pursuance thereof."

Having already reached the conclusion that motion No. 1 must be overruled, this motion must also be overruled. It is based on a state of fact which cannot arise.

■ Motion No. 3. This motion is that, in lieu of a commission, a jury be empaneled to ascertain just compensation.

The right of a defendant in a condemnation suit brought by the United States to have a jury trial of the amount of money that is just compensation, before an award has been made by condemnation commissioners, was not decided, and could not have been decided by the Circuit Court of Appeals in the Beatty Case, 203 F. 620. In that case an award by condemnation commissioners had been returned, and exceptions thereto by the landowners had been filed. At this juncture the landowners moved for a trial by jury as to the adequacy of the award. This motion was overruled, and the award was confirmed. The landowners then appealed, and the Circuit Court of Appeals held that in overruling the motion for a jury trial of the adequacy of the commissioners' award the trial court erred. Every step in that case, prior to the ruling on said motion, was (page 621 of 203 F.) expressly held free from error. Certainly that opinion affords no justification for ordering a jury trial in advance of an award by a commission and exceptions thereto by some defendant. On the other hand, that opinion requires an award by commissioners and an exception thereto, before a jury trial as to the adequacy of the award may be ordered. And the reason is that such an award may be satisfactory to all concerned, and the proper sum to be paid as just compensation may be thus finally settled, without the expense of a jury trial.

Motion No. 3 must be overruled.

Motion No. 4. This motion reads as follows:

"4th: If said motions One, Two and Three be denied, that the commission, when and if appointed, be instructed to ascertain what will be just compensation for parcels No. 212 a–I, 514.28 acres, and No. 212–I, 2,063.70 acres.

"(a) Upon the assumption that said parcels, or either of them, is the whole tract of the owner thereof;

"(b) Upon the assumption that the said parcels or either of them is not the whole tract of the owner but the land adjacent to said tracts or either of them belongs to the owner of the parcels or either of them proposed to be taken."

■ In the petition to condemn the wording of the Virginia statutes, especially of section 4366, Code 1930 has been followed. If, as I believe, it was a mistake so to do, the principle that the government is not bound by the defaults of its agents applies. Likewise, as I believe, no government attorney can waive a right inherent in the government as a sovereign. See former opinion in this case for authority (D. C.) 1 F.Supp. 406.

4a. It would be useless and merely misleading to instruct the commissioners on the assumption that either tract in Highland county is the whole tract owned by any defendant. The Crary contracts indicate that neither tract is the whole of the Crary claim. The answer of the lumber company shows that such is the fact in regard to the lumber company's claim. There is not one chance in a thousand that the claim of any other defendant coincides exactly with either tract sought to be condemned.

I shall overrule motion 4a.

4b. Before discussing motion 4b there are several questions which had best be considered now:

(1) The Form of Commissioners' Reports.

In conversation with one of counsel for the lumber company some time since, he said that he understood that it had been decided that the report of a condemnation commission must be in solido, an aggregate of value and damages. I have not found authority for this conclusion, and I believe it is unsound.

■ I think that the value of each of the two tracts sought to be taken in Highland county should be reported separately; and that the value of each tract should in the report of the condemnation commissioners be stated apart from the return as to damages to the residue. I can see no reason for reporting a total sum, consisting of the value of the property sought and the damages to the residue, less the benefits. On the other hand, the value should be arrived at regardless of ownership. This value is the same no matter which of the numerous claimants may subsequently prove a right to this part of the award, and hence it should be arrived at and reported separately. This was so done by the trial judge in the Grizzard Case, 219 U. S. 180, 182, 31 S. Ct. 162, 55 L. Ed. 165, 31 L. R. A. (N. S.) 1135.

I do not think of any good reason for re-

quiring a report in which these elements are aggregated and reported as a single total sum. Assuming that three commissioners act, it is possible that A and B can agree on the value of the land sought, but cannot agree on the damages to the residue; while B and C can and do agree as to the damages. If the law required agreement of the same two commissioners on an aggregate sum, the entire effort in the case supposed would result in a futility. And this futility may be justly avoided by having separate awards as to the two elements of which just compensation is composed.

Again, on exceptions to the report of the commissioners, aggregated awards would present an unnecessarily difficult, if not an insoluble, problem. Separate awards could be much more easily disposed of. Is the award for the land sought to be taken adequate or not? Is the award for damages adequate or not? These questions are much more easily and justly to be answered than those presented by an aggregated award, consisting of an unknown part of the value, and in another unknown part of the damages to the residue.

Moreover, section 4377, Code 1930, expressly provides that the value and the damages shall be separated in the commissioners' report. I know of no reason why this procedural statute should not be followed in this case.

(2) The Burden of Proof as to Damages. [16] I believe that the burden of proving damages to the residue, if any, rests on the defendant who claims such damages. This assertion seems to me to require little or no discussion. In 20 Corpus Juris, 982, § 386, it is said: " * * * The general rule is that the burden of showing the damages which the landowner will suffer rests upon him (43), while it is for the petitioner to show that benefits will accrue to the owner and the amount of such benefits, as well as other matters which tend to reduce or mitigate the damages."

Note 43 cites cases from many jurisdictions supporting the foregoing statement, and none to the contrary. To the authorities cited in note 43 the following citations may be added: Richmond Wharf & Dock Co. v. Blake Bros. Co., 66 Cal. App. 541, 227 P. 223; Mauvaisterre Drainage & Levee Dist. v. Wabash R. Co., 299 Ill. 299, 132 N. E. 559, 22 A. L. R. 944; City and County of San Francisco v. Tillman Estate Co., 205 Cal. 651, 272 P. 585; Los Angeles High School Dist. v. Schumann, 78 Cal. App. 353, 248 P.

737; East St. Louis Light & Power Co. v. Cohen, 333 Ill. 218, 164 N. E. 182; Forest Preserve Dist. of Cook County v. Dearlove, 337 Ill. 555, 169 N. E. 753; Ill. Power & Light Corp'n v. Barnett, 338 Ill. 499, 170 N. E. 717; Millard v. Northwestern Mfg. Co., 200 Iowa 1063, 205 N. W. 979; City of Hazard v. Combs, 229 Ky. 222, 16 S.W.(2d) 1022; City of Newark v. Eisner, 100 N. J. Eq. 101, 135 A. 86; L. & N. Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S.W.(2d) 22, 65 A. L. R. 440. See, also, 2 Lewis, Em. Dom. (3d Ed.) § 645 (426), p. 1114; § 651 (432).

It is the defendant who affirms that there will be damages to the residue, and it is in accord with the great weight of authority and with reason and fairness that the defendant should have the burden of proving such damages.

This burden, as I believe, includes proving what "the residue" is. This is a matter as to which such claimant has better means of information than the government has. Some facts, not known to and not discoverable by the government, and within the peculiar knowledge of the claimant, may be of high importance in determining what the residue consists of. It would be unusual, even amazing, if one claiming a tract of land, bought as separate parcels, at different times and from different vendors, for the purpose of conducting a business enterprise, should not know the boundary lines embracing such tracts of land. On the other hand, even if every parcel composing the tract has been conveyed to the lumber company by deed, and, if every deed is of record, which are not necessarily the facts, it would cost the government large sums to get copies of the descriptions and to make the surveys necessary to learn what the lumber company's officials already know.

The usual description of a mountain tract of land found in deeds of conveyance in this district commences with: Beginning at a white oak on (or near) such and such a creek, thence northerly to a beech, etc. In point of fact the owner knows where his corner trees are. A stranger, seeking to locate a number of tracts of land, described as above indicated, would be put to a prohibitive expense. And the government would have to go to this expense to independently ascertain what the residue is in the case at bar.

Without knowledge of what the residue is composed of, it will be impossible for the commissioners to ascertain the damages to

the residue. The party who claims damages cannot possibly have damages, unless there is evidence first of what the residue is, and next of injury to the market value of the residue.

It seems to me that reason, fairness, convenience, every consideration, support the belief that the burden of proving what the residue is composed of, and how it is situated with reference to the land sought to be taken, should be on the defendant, who asserts that damages to the residue will result from the taking and intended use of the parcels sought to be taken.

While on this point it seems advisable to call attention to the fact that the damages in question are not damages to the business of the owner of the residue, but to the residue. Which I take to mean injury to the market value of the residue which would be directly, not remotely, caused by the taking and by the use of the land taken as a part of the National Forest Reserve. See Town of Hingham v. U. S. (C. C. A.) 161 F. 295, 297, 15 Ann. Cas. 105; Sharp v. U. S., 191 U. S. 341, 354, 24 S. Ct. 114, 48 L. Ed. 211; U. S. v. Grizzard, 219 U. S. 180, 184, 185, 31 S. Ct. 162, 55 L. Ed. 165, 31 L. R. A. (N. S.) 1135; Campbell v. U. S., 266 U. S. 368, 371, 45 S. Ct. 115, 69 L. Ed. 328. See, also, 2 Lewis, Em. Dom. (3d Ed.) § 727(487).

(3) The Burden of Proving Benefits.

■ It seems unnecessary to discuss the reason for my belief that this burden rests on the government. See 20 Corpus Juris, 982 § 386, supra.

### (4) Right to Open and Close.

■ While on the question of the burden of proof, and the allied question of the right to open and close, this particular case presents here a question of some difficulty. Because of the contract rights of some of the Crary heirs, government counsel will be compelled to admit that $6.25 per acre of the tracts sought to be condemned is a fair aggregated award of value and damages to the residue; or is a fair value of the tracts sought to be taken, if no damages to the residue be allowed. It seems to me that, because of the Crary contract, the lumber company, which claims that $25 per acre is the value of the land sought to be taken, is asserting that the value is greater than the admitted value; and that the lumber company has therefore, not only the burden of proof in respect to damages to the residue, but also in respect to the value of the parcels sought to be taken. In 2 Lewis, Em.

Domain (3d Ed.) § 645(426), at p. 1114, it is said:

"As to the amount which the party condemning is willing to give or which he concedes to be the amount of the just compensation to be paid, there is no controversy and no issue in form or substance between the parties. The real issue is as to whether the compensation is more than the amount conceded. If this issue was put in form it would consist of an affirmation on the part of the landowner that the amount of compensation was more than a certain sum, and of a denial of this affirmation by the other party. This is always the practical issue between the parties, and the landowner always in effect maintains the affirmative of this issue. Consequently, upon the principle that he who maintains the affirmative of an issue must assume the burden of proof, the landowner is entitled to open and close the case, and this is true no matter whether his position is plaintiff or defendant."

The foregoing seems to me to be soundly reasoned, and I believe that the lumber company should be given the right to make the first (and its only) opening statement, the right to first put on its evidence in chief, and the opening and the close of the arguments after the evidence has been heard.

■ Motion No. 5. This motion reads: "That the Commission, when and if appointed, be instructed to ascertain and report whether ingress and egress to other property adjacent to the land proposed to be taken is reasonably practical without encroaching upon the land taken by petitioner."

The expression "other property adjacent to the land proposed to be taken" condemns this motion. Among the synonyms of "adjacent" are "close," "near," "neighboring." Property of the lumber company which is a part of the residue must be distinguished from other property of the lumber company which is near one or the other, or both, of the parcels sought to be taken, and which is not a part of the residue.

### (6) Instructions to the Commissioners.

■ As the lumber company's motions (4 and 5) to instruct the commissioners cannot be granted, and if no other motion be made to give instructions, my present inclination is to give no instructions, except as hereinbelow shown. The objections to giving detailed instructions to condemnation commissioners are: (1) that such instructions must necessarily be drafted in ignorance of what evidence will be offered, and hence may be mis-

leading; and (2) instructions to be unobjectionable must be so voluminous as to confuse, rather than to enlighten, the commissioners. At least as at present advised, it seems sufficient to put into the order appointing the commissioners merely the following: * * * Any three or more of whom may act, for the purpose of ascertaining and reporting, in respect to each of the two tracts of land sought to be taken, just compensation for the fee simple interest in the land sought to be taken; and also damages, if any, to the residue, over and above the benefits, if any, peculiar to said residue, directly resulting from the taking and the proposed use to be made by the Government of the lands sought to be taken. The residue referred to above is the remainder of a single tract or parcel of land, a part of which is sought to be taken.

The foregoing instruction is modeled on the instruction as found in the record of Va.-Western Power Co. v. Kessinger, 122 Va. 135, 94 S. E. 186. See volume 63, p. 37, Records and Briefs at Staunton, Va.

### (7) The Time with Reference to which Value should be Ascertained.

 Referring here to the value of the land sought to be taken, the time as of which this value should be ascertained may be of some importance. In many cases it has been held that the time is the time the property is taken; many cases hold that the time is the date of the institution of the proceeding to condemn; and many cases hold that the time is the date of the award of the tribunal which ascertains the value. See 2 Lewis, Em. Dom. (3d Ed.) § 705 (477); 20 Corpus Juris, 829–831.

In this case the time of the taking, if the taking ever happens, is in the future, and is wholly unknown and practically unknowable. The government does not have to take the land, and may abandon the prosecution of this proceeding at any time. But, in any event, the government has, so far as I know, no right to take the land until an award has been made, and until the sum of money awarded has been paid into court. At best it will be weeks, and may be months, before an award can be made. When made, the report of the condemnation commissioners must lie in the clerk's office thirty days for exceptions. Section 4369, Code Va. 1930. If exceptions are filed, there must be a trial thereof. If an exception is sustained, another commission must be appointed, and the proceeding in effect take a new start. And this may happen more than once. If, finally, an award is confirmed, an appeal may be taken and a delay of a year or more may be entailed. If no appeal is taken, or if the appeal is unsuccessful, the government may, or may not, at its election pay the amount awarded into court, and it thereupon obtains title to the land. Then for the first time is the land "taken." See Cherokee Nation v. Southern Kansas Ry. Co., 135 U. S. 641, 659, 10 S. Ct. 965, 34 L. Ed. 295.

It is often difficult to estimate fairly the value of land as of the time when the estimate is made. And in a case such as this is it verges on the impossible to require the condemnation commissioners to ascertain the value of land as of an entirely unknown future date, which may be a few months in the future and which may be a few years in the future. In the interval between the institution of this proceeding and the taking of the land, if ever taken, the owners have not been deprived of the possession or of the use of the land.

Distinguishing cases in which the condemnor had taken the property before the value had been ascertained, and also distinguishing between dicta and decisions, I have found no binding authority which seems to me to require that in this case the commissioners should ascertain the value of the land sought to be taken as of the date when, if ever, the land may be taken. See Seaboard Air Line v. U. S., 261 U. S. 299, 306, 43 S. Ct. 354, 67 L. Ed. 664; U. S. v. Rogers, 255 U. S. 163, 167, 169, 41 S. Ct. 281, 65 L. Ed. 566; U. S. v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 76, 33 S. Ct. 667, 57 L. Ed. 1063; Bauman v. Ross, 167 U. S. 548, 587, 17 S. Ct. 966, 42 L. Ed. 270; Monongahela Navigation Co. v. U. S., 148 U. S. 312, 341, 13 S. Ct. 622, 37 L. Ed. 463; R. & M. Railroad Co. v. Humphreys, 90 Va. 425, 436, 18 S. E. 901; Richmond & P. Electric R. Co. v. Seaboard, etc., Co., 103 Va. 399, 407, 49 S. E. 512; Hunter's Adm'r v. Ches. & O. R. Co., 107 Va. 158, 165, 59 S. E. 415, 17 L. R. A. (N. S.) 124; Appalachian Power Co. v. Johnson, 137 Va. 12, 26, 30, 119 S. E. 253; Duncan v. State Highway Com., 142 Va. 135, 142, 143, 128 S. E. 546.

The authorities which adopt the date of institution of the condemnation proceeding as the time as of which the value of the land sought to be taken should be ascertained are not without weight. See 2 Lewis, Em. Dom. (3d Ed.) § 705, pp. 1222, 1223. However, I have found no binding authority so holding, and such date seems to me less advisable than the date when the award is made.

In the case at bar the petition to condemn was filed November 6, 1931. The commissioners cannot now possibly meet until at least some day in December 1932. Certainly it would be more difficult to ascertain, in December, 1932, the value of the land as of November, 1931, than as of December, 1932.

On the whole, I believe that the valuation should be made as of the time when the commissioners view the land and the witnesses testify before the commissioners. This rule has the support of many decisions, and it eliminates elements of uncertainty necessarily pertaining to either of the other rules. 3 Lewis, Em. Dom. (3d Ed.) § 705, pp. 1224, 1225.

### (7a) Just Compensation.

By force of the Supreme Court rulings which have been cited, the phrase "just compensation," where a part of a single tract of land is sought to be taken, includes both the value of the land sought to be taken and the damages, if any, to the residue. In ascertaining the value of the land sought to be taken, the expression "market value" has been frequently approved. See 2 Lewis, Em. Dom. (3d Ed.) § 706; 20 Corpus Juris, 727. But the word "market" is usually used in condemnation cases in its secondary or figurative sense as meaning the fair value. North American Tel. Co. v. Northern Pac. Ry. Co. (C. C. A.) 254 F. 417, 418. Hence I believe that the value of land sought to be taken is the price it would bring if offered for sale by one who desires, but is not obliged to sell, and is bought by one who is willing to buy, but is under no necessity of buying.

In fixing the fair value of the land sought to be taken, a question may arise as to whether the value should be the cash value, or the value on the more usual terms of part cash and part on time. In this case, if the government takes either or both of the tracts sought to be condemned, it must pay into the court in cash the value of what is taken, and perhaps also damages to the residue. For this reason I believe that the effort of the commissioners should be to ascertain the fair cash value of each of the two tracts sought to be taken. See Shoemaker v. U. S., 147 U. S. 282, 304, 13 S. Ct. 361, 37 L. Ed. 170; Richmond & Mechlenburg R. Co. v. Humphreys, 90 Va. 425, 436, 18 S. E. 901; Town of Galax v. Waugh, 143 Va. 213, 219, 129 S. E. 504; U. S. v. Inlots, 26 Fed. Cas. pages 483, 490, Nos. 15,441, 15,441a; Conners v. Indiana, I. & I. R. Co., 193 Ill. 464, 62 N. E. 221, 224, 225.

In arriving at just compensation in the case at bar, the fact that the title to land sought to be taken is disputed should be ignored by the commissioners. If the government takes the land, it will at least in theory acquire the title of all of the parties defendant, which presumably is a perfect and indisputable title. The rights of every defendant will on payment of the award into court be transferred from the land to the fund. Section 4374, Code Va. 1930. It would therefore be an injustice for the commissioners to lessen the award because the title is now in dispute. See 2 Lewis, Em. Dom. (3d Ed.) § 716(483); 20 Corpus Juris, 730, § 188.

I have not undertaken to define the meaning of the word "residue" further than to describe it as "the remainder of a single tract or parcel of land, a part of which is sought to be taken." As I have no knowledge of what evidence may be offered before the commissioners, it is obvious that I cannot properly now express an opinion on this probably disputable subject.

Motion No. 6. This motion reads: "Respondent insists upon its right to trial by jury to ascertain just compensation for the land proposed to be taken, when and if there is a report of a commission duly appointed."

This motion is premature. It may be that the award of the commissioners will be satisfactory to the lumber company, and that no defendant will move for a jury trial.

I have hereinabove spoken of a possible jury trial. The question of my duty in respect to following the Beatty Case (C. C. A.) 203 F. 620, is of such delicate character that it should be reserved for future consideration if and when the question actually arises. In addition to Bragg v. Weaver, supra, 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135; see State of Missouri ex rel. Hurwitz v. North, 271 U. S. 40, 42, 46 S. Ct. 384, 70 L. Ed. 818. In Dohany v. Rogers, 281 U. S. 362, 369, 50 S. Ct. 299, 302, 74 L. Ed. 904, 68 A. L. R. 434, it is said: "The due process clause does not guarantee to the citizen of a state any particular form or method of state procedure. Under it he may neither claim a right to trial by jury nor a right of appeal. Its requirements are satisfied if he has reasonable notice and reasonable opportunity to be heard and to present his claim or defense; due regard being had to the nature of the proceeding and the character of the rights which may be affected by it. Reetz v. Michigan, 188 U. S. 505, 508, 23 S. Ct. 390, 47 L. Ed. 563; Hurwitz v. North, 271 U. S.

40, 46 S. Ct. 384, 70 L. Ed. 818; Bauman v. Ross, 167 U. S. 548, 593, 17 S. Ct. 966, 42 L. Ed. 270; Backus v. [Fort St.] Union Depot Co., supra, 169 U. S. 569, 18 S. Ct. 445, 42 L. Ed. 853."

It is worthy of notice that the last three cases I have cited are later in date than the Beatty Case.

At any rate, motion No. 6 must pro tem. be overruled.