## In re STANDARD GAS & ELECTRIC CO. HASTINGS v. H. M. BYLLESBY & CO. et al.

### No. 1204.

District Court, D. Delaware.
Nov. 3, 1939

William H. Button and Simon H. Rifkind (of Wagner, Quillinan & Rifkind), both of New York City, and Herbert L. Cohen, of Wilmington, Del., for Daniel O. Hastings, special trustee.

Theodore Kiendl (of Davis, Polk, Wardwell, Gardiner & Reed), of New York City, and Thomas M. Keith, of Wilmington, Del., for H. M. Byllesby & Co., Byllesby Corporation, and certain individual defendants.

Alexander B. Siegel (of Van Vorst, Siegel & Smith), of New York City, and William Prickett and Joseph S. Wilson, both of Wilmington, Del., for Walter T. Rosen et al.

Hugh M. Morris and Edwin D. Steel, Jr., both of Wilmington, Del., for Union Trust Co. of Pittsburgh and Andrew W. Robertson.

Royal E. T. Riggs and H. Preston Coursen (of Seibert & Riggs), both of New York City and Howard Duane, of Wilmington, Del., for Victor Emanuel et al.

Bethuel M. Webster and Henry C. Smith (of Webster & Garside), both of New York City, and John J. Morris, Jr. (of Hering, Morris, James & Hitchens), of Wilmington, Del., for Albert L. Cummins et al.

Claire W. Hardy, of Chicago, Ill., and Howard Duane, of Wilmington, Del., for Arthur C. Allyn.

Horace G. Hitchcock (of Chadbourne, Wallace, Parke & Whiteside), of New York City, and H. Albert Young, of Wilmington, Del., for Haystone Securities Corporation.

H. G. Pickering (of Mudge, Stern, Williams & Tucker), of New York City, and William Prickett and Joseph S. Wilson, both of Wilmington, Del., for Amerex Holding Corporation.

Joseph M. Hartfield and Orison S. Marden (of White & Case), both of New York City, and Warren Roberts, of Wilmington, Del., for First Security Co.

NIELDS, District Judge.

Motions by defendants challenging the jurisdiction of the court.

In the bill of complaint plaintiff alleges 19 causes of action against 56 defendants. Defendants H. M. Byllesby and Company, Byllesby Corporation and Standard Power and Light Corporation are Delaware corporations. They will be dealt with separately. The remaining defendants reside outside the district of Delaware.

November 26, 1937 plaintiff was appointed by this court Special Trustee of certain property of Standard Gas and Electric Company, debtor in reorganization, hereinafter called "Standard". This property consisted of alleged causes of action against defendants. The trustee was directed "to institute and prosecute such suit or suits as may be appropriate to realize upon such property and assets and to enforce any and all claims, rights and causes of action included among such property and assets."

July 27, 1938, complainant filed in this court his complaint against the defendants. The relief sought is an accounting of "all profits, damages and losses received from or sustained by Standard by reason of any of the transactions set forth in said causes of action" alleged in the bill of complaint, and a money judgment against each and all of defendants. Upon petition of the special trustee filed July 28, 1938, the court ordered the defendants named in the bill of complaint to "appear and file in the Clerk's office of this Court their answer or other defense to the said bill of complaint within twenty (20) days after each of said defendants has been served as provided in this Order, and in default thereof this Court will proceed to a hearing and determination of this cause."

Subpoenas and certified copies of the order and bill of complaint were served upon defendants outside the territorial limits of this court. The returns of the United States marshals show that the subpoenas were served on defendants in federal districts outside Delaware and widely scattered throughout the United States. The alleged causes of action relate to transactions which occurred long before the filing of the reorganization petition by Standard and they do not involve any federal statute or the Constitution of the United States.

September 9, 1938, the court granted leave to defendants to appear specially and move (1) to vacate the order of this court of July 28, 1938, providing for service of process upon each defendant outside the district of Delaware; (2) to vacate the return of service on the subpoenas for each of the defendants; and (3) to quash the subpoenas served upon the defendants outside the district of Delaware.

The motions involve a single question of law. Does this court have jurisdiction over the persons of nonresident defendants through service of process outside the district of Delaware? In other words, does the jurisdiction of this court extend beyond this district in a suit in personam by a trustee appointed by this court in reorganization proceedings under section 77B, Bankr. Act, 11 U.S.C.A. § 207, to recover damages from defendants, not residents of the district and not found there, for money alleged to have been wastefully diverted from the treasury of the corporation?

The validity of the attempted service depends upon the meaning and effect of section 77B, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 207, sub. a. It provides: "* * * If the petition or answer is so approved, an order of adjudication in bankruptcy shall not be entered and the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature."

It will be noted that the paragraph quoted above defining the jurisdiction of this court over the debtor and its property is found in the middle of a long subsection a in section 77B.

Is the quoted paragraph a novel and revolutionary provision? Or is it a natural advance in legislation to meet modern business conditions. The language of the paragraph can best be understood by tracing its history.

In the Rock Island case the Supreme Court said:

"From the beginning, the tendency of legislation and of judicial interpretation has been uniformly in the direction of progressive liberalization in respect of the operation of the bankruptcy power. * * *

"The act of 1800 was one exclusively in the interest of the creditor. But the act of 1841 took what then must have been regarded as a radical step forward by conferring upon the debtor the right by voluntary petition to surrender his property, with some exceptions, and relieve himself of all future liability in respect of past debts. The act of 1800, like the English law, was conceived in the view that the bankrupt was dishonest; while the act of 1841 and the later acts proceeded upon the assumption that he might be honest but unfortunate. One of the primary purposes of these acts was to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes,' and to give him 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 93 A.L.R. 195.

"By the Act of March 2, 1867, p. 567, § 43, as amended by the Act of 1874, c. 390, § 17, 18 Stat. 178, 182, the debtor for the first time was permitted, either before or after an adjudication in bankruptcy, to propose terms of composition to his creditors to become binding upon their acceptance by a designated majority and confirmation by the judge.

"The fundamental and radically progressive nature of these extensions becomes apparent upon their mere statement; but all have been judicially approved or accepted as falling within the power conferred by the bankruptcy clause of the Constitution. Taken altogether, they dem-

onstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed.

"Section 77 [11 U.S.C.A. § 205] advances another step in the direction of liberalizing the law on the subject of bankruptcies. Railway corporations had been definitely excluded from the operation of the law in 1910 (chapter 412, § 4, 36 Stat. 838, 839, 11 U.S.C.A. § 22), probably because such corporations could not be liquidated in the ordinary way or by a distribution of assets. * * *

"Equity receiverships, resorted to for that purpose, have never been satisfactory for many reasons. Partly, no doubt, in recognition of that situation, Congress, by section 77, added railroad corporations to the category of those who might have relief by legislation passed in virtue of the bankruptcy clause of the Constitution; and determined, after consideration, that such relief to be effectual should take the form of a reorganization, and should extend to cases where the corporation is 'unable to meet its debts as they mature.' * * * Obviously, section 77 does no more than follow the line of historical and progressive development projected by previous acts." Continental Ill. Nat. Bank v. Chicago, Rock Island Ry., 294 U.S. 648, 668, 670, 672, 55 S.Ct. 595, 603, 79 L.Ed. 1110.

In complainant's brief it is stated that section 77B "is a revolutionary statute". That statute had been preceded by section 77 approved March 3, 1933, 11 U.S.C.A. § 205. The particular words upon which complainant rests his case are found in section 77B, sub. a. They are that the reorganization court "shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, * * *." The words quoted above are copied directly from section 77 dealing with the reorganization of railroads. The history of section 77 is found in the Congressional Record, Part 5, Vol. 76, pp. 4876–4888, 5104–5134 and 5350–5360.

This history shows that its purpose was not revolutionary. The purpose of section 77 was to substitute a new reorganization proceeding for the old ancillary receiverships. It was with this purpose that "debtor and its property wherever located"—not third persons and their property—were placed within the exclusive jurisdiction of the reorganization court.

Railroad systems extend through many states. They deal daily with thousands of shippers and have on their books a vast number of claims of all kinds against shippers in all the states through which they run. It is incredible that Congress intended in enacting section 77 to provide that these claims when disputed must be tried out and determined in the reorganization court alone.

Plaintiff contends that the choses in action or claims asserted in this case are "property" of the debtor over which this court has exclusive jurisdiction and that the exclusive jurisdiction to be effective must empower this court to issue its process for service beyond the territorial limits of the district. This argument is based upon selected passages from the Rock Island case. A clear view of what the Supreme Court considered to be property of the debtor within the exclusive jurisdiction of the district court appears in the following language: " * * * The bonds deposited as collateral were not in the hands of purchasers, but in the hands of creditors as security. That the equity which the debtor retained was a property interest was not and could not be disputed by the creditors; nor was the claim of the creditors in respect of their rights in the collateral security or the rank of their liens questioned by the debtor. In short, no adverse claim was brought forward by either of the parties to the controversy. The only question was in respect of the creditors' remedy; and the sole point is as to the authority of the bankruptcy court to delay for a reasonable time an interference with the reorganization proceeding which would result from an immediate sale of the collateral." In other words, the debtor had an equity in the pledged bonds. It had it at the time they were pledged. It was not seeking the recovery of damages from the pledgees of the bonds for some tort or breach of contract, but the protection and preservation of its own property.

In Kelley v. Gill, 245 U.S. 116, 38 S.Ct. 38, 39, 62 L.Ed. 185, a trustee in an ordi-

nary bankruptcy proceeding sought to enforce the liability of all of the stockholders of the bankrupt corporation. The trustee urged that since the obligation of the stockholders constituted property of the corporation, the obligors were within the jurisdiction of the bankruptcy court. In disposing of this contention, the Supreme Court said: "Nor can the jurisdiction of the court of bankruptcy be maintained on the ground that this is a suit brought to determine a controversy concerning property in the possession of the trustee. He had possession merely of contested claims against alleged stockholders. Many of the defendants may prove not to be stockholders. And even those confessedly stockholders are, in respect to the matters in controversy, as much strangers to the corporation and to the estate as any other person against whom the corporation had a cause of action. * * * Park v. Cameron, 237 U.S. 616, 35 S.Ct. 719, 59 L.Ed. 1147."

The precise question presented in the case at bar was considered and determined in the following cases: Bovay v. H. M. Byllesby & Co., 5 Cir., 1937, 88 F.2d 990; United States v. Tacoma Oriental S. S. Co., 9 Cir., 1936, 86 F.2d 363. In re Missouri Pac. Co. (Thompson v. Terminal Shares), D.C., 1938, 24 F.Supp. 724, affirmed 8 Cir., 104 F.2d 1; certiorari denied, 306 U.S. 652, 59 S.Ct. 643, 83 L.Ed. 1051; In re Avondale Farms Dairy, D.C., 1938, 25 F.Supp. 605.

In the Southern District of Mississippi a proceeding for the reorganization of the Vickburg Bridge & Terminal Company under 77B was instituted in the District Court for the Southern District of Mississippi. An action "in form and substance a plenary suit", was instituted by the trustees of the debtor "under the style and number of the reorganization proceeding" against Byllesby and others. The bill of complaint charged that the defendants had bought securities of the debtor at 90 and had immediately sold them at par; that $200,000 had been paid by the debtor to the defendants without consideration or valid authorization; and that a large part of the capital of the debtor had been delivered to the defendants without consideration. Service of process was made on the defendants in the districts of Delaware and Illinois. The defendants appeared specially and moved to quash service of process.

The motion to quash was granted by the district court and affirmed on appeal.

The Court of Appeals quoted the jurisdictional provisions of section 77B, sub. a, the court shall have exclusive jurisdiction of the debtor and its property wherever located * * * and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature; sub. c, the judge, in addition to the jurisdiction conferred by section 11 of the Bankruptcy Act, 11 U.S.C.A. § 29, is granted power to enjoin or stay the commencement or continuation of suits against the debtor (including judicial proceedings to enforce any lien upon the estate) until after final decree. Sub. o, 11 U.S.C.A. § 207, sub. o. The jurisdiction and powers of the court are declared to be "the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved".

The court held:

"This is not a suit to recover property admittedly owned by the bridge company, nor one for a stay or injunction of any kind. It is a suit upon a chose in action, or choses in action, and seeks a judicial determination of the validity of an alleged indebtedness of appellees for moneys due appellants as trustees of the debtor. It is conceded that a chose in action which belongs to the debtor is an intangible asset, subject to the control of the bankruptcy court, but the title to the thing is not sufficient to confer jurisdiction over the person of the defendants owing the money who reside in another district and are beyond the ordinary processes of the court.

"If the District Court had appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts, it would not have acquired jurisdiction of a suit by that receiver on a claim, such as is here asserted, against a nonresident of the district not doing business therein and not found or served therein. Barfield v. Zenith Tire & Rubber Co. (D.C.) 9 F.2d 204, affirmed sub nom. Kirby v. Wilson (C.C.A. [6 Cir.]), 27 F.2d 327. Our conclusion is that, under paragraphs (a) and (c), the process served upon appellees outside of the district was ineffective to

acquire jurisdiction of the suit in personam against them.

"It remains to inquire with reference to paragraph (o), the only other source of power having any relevancy to the question of jurisdiction here presented. It grants such powers as are conferred in ordinary voluntary adjudications in bankruptcy. With the exceptions provided by sections 55 and 56 of the Judicial Code (28 U.S. C.A. §§ 116, 117), the process of the bankruptcy court in ordinary adjudications is ineffective if served on defendants outside of the district. Lathrop v. Drake, 91 U.S. 516, 23 L.Ed. 414. The court in reorganization proceedings under section 77B [11 U.S. C.A. § 207] is bound by this limitation, except where a wider jurisdiction is expressly conferred or necessarily implied. 'It is not lightly to be assumed that Congress intended to depart from a long-established policy.' Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 624, 69 L.Ed. 1119.

"The effort to take jurisdiction in this case was a nullity, and the motions to quash the service and to dismiss the suit were properly sustained." Bovay v. H. M. Byllesby & Co., 5 Cir., 1937, 88 F.2d 990, 992.

In the Western District of Washington an order in reorganization proceedings directed the Comptroller General of the United States, the Secretaries of Commerce and of the Treasury and a director of the Shipping Board to appeal before the court to show cause why they should not make certain payments due the debtor in connection with ocean mail contracts. Motions were made by the above named individuals to quash the extraterritorial service of process.

The District Court refused to quash the service, but the Court of Appeals reversed the District Court:

"We believe that the act giving exclusive jurisdiction of the lower court over the debtor's property wherever located simply means that the res (the debtor's property) is to be considered solely under the jurisdiction of the lower court. Any wrongful invasion, interference, or disposition of that res is to be dealt with solely by the lower court. Jurisdiction over a person outside the lower court's jurisdiction, is given to the lower court, only if such person is in some manner invading, interfering, or disposing of the debtor's res, and then only to the extent of preventing or forestalling the invasion, interference

or disposition of such res. The act gives no jurisdiction to the trial court to issue its process outside its district in proceedings purely in personam, in which no protection of the debtor's res is involved. * * *

"It is contended, that since an appropriation had been made for the payment of amounts due under ocean mail contracts, and that the Postmaster General had certified to the Comptroller General the amount due appellee, there remained nothing to be done by the officers except the payment, which is a ministerial duty. * * *

"When the appropriation was here made, the funds thus appropriated were not by the appropriation transferred to appellee. The funds would become the property of appellee only by application of such appropriation, or, in other words, payment to appellee. The funds appropriated, were not, therefore, property belonging to appellee. We conclude that the lower court had no jurisdiction over the persons of the individual appellants.

"It should be here noted that section 77 (a) of the Bankruptcy Act was amended by the Act of August 27, 1935, 49 Stat. 911 (11 U.S.C.A. § 205 (a) and under that amendment it is provided that 'Process of the court shall extend to and be valid when served in any judicial district.' It is significant that although section 77B was also amended in that month [11 U.S.C.A. § 207], no such provision was included in that amendment." United States v. Tacoma Oriental S. S. Co., 9 Cir., 1936, 86 F.2d 363, 368.

■ The choses in action or claims vested in the trustee are not "property" of the debtor within the meaning of section 77B, sub. a. It follows that as to the nonresident defendants this court is without jurisdiction to entertain this suit.

---

Separate consideration must now be given to the motion by the three resident defendants to dismiss the complaint.

The complaint against the resident defendants is also a plenary suit by the same trustee in reorganization for an accounting and damages. Those defendants, H. M. Byllesby and Company, Byllesby Corporation and Standard Power and Light Corporation have moved to dismiss the complaint on the ground that the court does not have jurisdiction of the controversy because diversity of citizenship is wanting. In short, that jurisdiction is lacking be-

cause plaintiff, debtor and defendants are all citizens of the same state.

Defendants contend that the disposition of this motion is controlled by section 23 of the Bankruptcy Act, 44 Stat. 664, 11 U.S.C.A. § 46: "Jurisdiction; United States and State courts. (a) * * *. (b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt [debtor], whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy [reorganization] had not been instituted, unless by consent of the proposed defendant, * * *".

Plaintiff contends that suit against resident defendants in this court is authorized by section 77B, sub. a, which provides that this court, during the pendency of the reorganization proceedings shall have (a) exclusive jurisdiction of the debtor's property wherever located and (b) "all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor". Because a federal court in an equity receivership would have power to entertain an ancillary suit regardless of the citizenship of the parties, the plaintiff argues that 77B (a) grants power to this court to entertain this plenary suit.

In Schumacher v. Beeler, 293 U. S. 367, 55 S.Ct. 230, 233, 79 L.Ed. 433, a trustee in bankruptcy, before the enactment of section 77B, sub. a, attempted to prosecute a plenary suit for a money judgment in a federal court against resident and nonresident defendants without their consent. Section 23, sub. b, defeated this suit: "In enacting section 23, it was clearly the intent of the Congress that the federal courts should not have the unrestricted jurisdiction of suits between trustees in bankruptcy and adverse claimants which these courts had exercised under the broad provisions of section 2 of the Act of 1867. The purpose was to leave such controversies to be heard and determined for the most part in the state courts 'to the greater economy and convenience of litigants and witnesses.' But no reason appeared for a denial of jurisdiction to the federal court if the defendant, the adverse claimant, consented to be sued in that court. The Congress, by virtue of its constitutional authority over bankruptcies, * * * could confer or withhold jurisdiction to entertain such suits and could prescribe the conditions upon which the federal courts

should have jurisdiction. See Sherman v. Bingham, 21 Fed.Cas. 1270, 1272, No. 12,-762. Exercising that power, the Congress prescribed in section 23b the condition of consent on the part of the defendant sued by the trustee. Section 23b was thus in effect a grant of jurisdiction subject to that condition."

■ The jurisdictional rule laid down in section 23, sub. b has not been modified by section 77B, sub. a. That rule is applicable to plenary suits brought by reorganization trustees. In re Prima Co. (Harris Trust & Savings Bank v. Keig), 7 Cir., 1928, 98 F.2d 952; certiorari denied, Jan. 3, 1939, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426: In re the United Sportwear Company, Inc., Debtor, 28 A.B.R.,N.S., 456 (D.C.Mass., 1935); In re Missouri Pac. R. Co. (Thompson v. Terminal Shares), D.C., 24 F.Supp. 724; affirmed 8 Cir., 104 F.2d 1; certiorari denied 306 U.S. 652, 59 S.Ct. 643, 83 L.Ed. 1051.

In the Prima case, decided in August of last year, the Circuit Court of Appeals for the Seventh Circuit held that section 23, sub. b, had not been repealed by section 77B; that the District Court was precluded by section 23, sub. b, from assuming jurisdiction over a plenary action, authorized in pending 77B proceedings, against a resident defendant objecting on jurisdictional grounds.

By leave of court the trustee appointed in the reorganization proceedings filed a petition against two banks (a) for losses allegedly sustained as the result of the banks' mismanagement of the debtor's business and (b) for repayment of claims said to have been unlawfully paid to the banks by the debtor. The banks filed answers denying the charges. After hearing, a decree against the banks was awarded.

The Circuit Court of Appeals considered the question of jurisdiction [98 F.2d 956]:

"It is not denied that these appellants were adverse claimants (see Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897), or that the debtor or the trustee did not have actual or constructive possession of that which they sought to reclaim and recover in their suit * * *.

"Where a trustee files claims against a third party as to property not in the actual or constructive possession of the bankrupt, * * * and such third person asserts adversely a defense which is substantial, a court of bankruptcy is without jurisdic-

**28**

tion, either summary or plenary. Jaquith v. Rowley, 188 U.S. 620, 23 S.Ct. 369, 47 L.Ed. 620; Harris v. First National Bank, 216 U.S. 382, 30 S.Ct. 296, 54 L.Ed. 528; Park v. Cameron, 237 U.S. 616, 35 S.Ct. 719, 59 L.Ed. 1147."

The limitations of section 23 are only applicable to independent actions to recover property or damages where there is a real contested issue. To require that such suits be in the court where the opposing party could have been sued by the debtor will not interfere in any substantial way with the administration of the estate.

█ As to the resident defendants this court is without jurisdiction because section 23, sub. b, applies and diversity of citizenship is wanting.

All motions to dismiss must be granted